Robert MITCHELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 978S184.

Supreme Court of Indiana.

Dec. 21, 1979.

Rehearing Denied March 10, 1980.

Mark Peden, Foley, Foley & Peden, Martinsville, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Robert Mitchell was tried by a jury in Brown Circuit Court and found guilty of theft, Ind.Code § 35–17–5–3 (Burns 1975), two counts of automobile banditry, § 35–12–2–1, possession of burglary tools, § 35–13–8–1, and was found to be a habitual criminal, § 35–8–8–1. The court sentenced appellant to life imprisonment. He raises nine issues for our review here: (1) whether the trial court erred in denying a motion for continuance on the morning of trial; (2) whether the trial court erred in arraigning appellant on the habitual criminal charge, after he was found guilty of the four charges enumerated above, without granting a continuance; (4) whether the trial court erred in allowing the prosecuting attorney to cross-examine appellant concerning his commission of other crimes; (5) whether the life sentence imposed under the habitual criminal statute is unconstitutional; (6) sufficiency of the evidence of theft; (7) sufficiency of the evidence for automobile banditry under Count three; (8) sufficiency of the evidence for automobile banditry under Count four; and (9) sufficiency of the evidence regarding the conviction for possession of burglary tools.

On November 8, 1975, security police discovered that a number of television sets had been removed from the maintenance building adjacent to the Brown County Inn. The condition of the door to the building indicated there had been forced entry, because there were scratch marks around the door striker plate and lock, and on the door itself. Wire caging had been cut, and the padlock securing the door had been cut. Police officers found footprints in the mud around the shed and followed them to a wooded area adjacent to the baseball diamond, which was located near the maintenance shed. The stolen television sets were found stacked in the woods. One set of the footprints displayed had a diagonal mark across the heel. Tire marks also led from nearby State Road 46 to the baseball diamond and then back to the road.

Henry Champion, a security officer for the Brown County Inn, testified that on November 8, at approximately 12:30 a. m., while making a routine patrol through the motel complex, he noticed a vehicle that appeared to be disabled or stuck in the mud on the baseball diamond. Shortly thereafter, he noticed a tow truck arrive and help remove the disabled automobile. He notified the sheriff of this incident. The police then took up a position within the Inn to enable them to observe the location of the television sets through binoculars. At approximately 6:00 p. m., on that day, a pick-up truck stopped along State Road 46 near the Inn. Appellant Mitchell and his co-defendant, Stewart, were observed transporting the television sets from the woods to the pick-up truck. They then left with the

television sets loaded on the pick-up truck. Mitchell and Stewart were later arrested. They had hidden the television sets and some bolt cutters at the residence of appellant's uncle. In addition, the print of Stewart's shoes matched the footprint with the diagonal line found earlier by the police. Pursuant to a search warrant, the police searched appellant Mitchell's automobile and found burglary tools which matched the marks left on the maintenance shed door and striker plate. The police also found mud samples on the car which were determined to be from the baseball diamond.

## I.

On the day the trial was to begin, March 28, 1978, appellant was represented by attorney Fawcett, who had been appointed by the court as pauper counsel. Appellant appeared on this date with Fawcett and attorney Blum, his proposed private counsel. Blum moved for a continuance so that he might familiarize himself with Mitchell's case. Blum requested a continuance of forty-five days. However, attorney Fawcett stated to the court that he was prepared for trial and was willing to proceed. The trial court denied appellant's motion for a continuance.

The allowance of a continuance at this point in the proceedings, occasioned by the requested substitution of trial counsel, was within the discretion of the trial judge. His judgment can rise to the level of error and be questioned by us only if it appears that he abused his discretion to the detriment and prejudice of the defendant. *German v. State*, (1978) Ind., 373 N.E.2d 880, 882; *Magley v. State*, (1975) 263 Ind. 618, 624, 335 N.E.2d 811, 816; *Jones v. State*, (1978) Ind.App, 371 N.E.2d 1314, 1316. In *Jones*, the Court of Appeals found the trial judge had in fact abused his discretion when he denied the defendant a continuance, where the appointment of pauper counsel had come so close to the time of trial that the defendant had only three hours to consult with his attorney. On the other hand, in *German, supra,* the defend-

ant first notified the court he was firing his attorney on the morning of trial after the jury had been impaneled. The attorney who had been counsel of record for four months was unaware that defendant was considering discharging him until such motion was filed. We found in *German* that the court properly denied a motion for continuance and forced the defendant to go to trial on the date scheduled. In making this determination, this Court stated:

"It is clearly established that a defendant charged with having committed a felony be allowed representation by counsel. *Gideon v. Wainwright,* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Nevertheless, a defendant may not through a deliberate process of discharging retained or assigned counsel whenever his case is called for trial disrupt sound judicial administration by such delaying tactics."

373 N.E.2d at 882.

In this case there was a period of some two and one-half years during which appellant changed counsel many times. The court appointed counsel to represent him on November 10, 1975. In the ensuing years before trial, there were four separate appointments of pauper counsel for Mitchell, interspersed by his request for removal from pauper status so that he could hire private counsel. This request was granted, but Mitchell later discharged his private counsel and again had pauper counsel appointed. Appellant's assertion that he was notified of the trial setting by his attorney only six days before he actually went to trial, leaving him no time to make a decision as to whether to hire private counsel for his trial, is not convincing under the facts here. The trial date was set well ahead of time, sufficient for all to be advised and take part in it. Mitchell's appointed counsel stated to the court that he was aware of the trial setting in ample time and that he was prepared to try the case. He further indicated that his client had been notified and was ready to go forward. In view of the long history of substitutions and continuances in the record, the trial court did not abuse its discretion by deny-

ing the motion for a continuance so that appellant might again substitute counsel on the morning of trial. No error is presented on this issue.

## II.

■ On March 27, 1978, one day before the trial date, appellant filed his notice of alibi. On the following day the court sustained the State's motion to strike the alibi notice. Appellant now claims this was error.

Ind.Code § 35–5–1–1 (Burns 1975) provides that a defendant must serve his notice of alibi upon the prosecuting attorney at least ten days before trial. Additionally, § 35–5–1–3 provides that if the alibi notice is not timely filed, the court shall, in the absence of a showing of good cause for such failure, exclude the evidence offered by the defendant to establish an alibi. Appellant does not show good cause for his failure to timely file his notice of alibi. As pointed out in Issue I above, this cause stood pending for some length of time with a great deal of activity, and the trial date was set well in advance. Thus, appellant had ample time to file his notice of alibi. Since he failed to show good cause for failing to timely file the motion, and since it was filed only one day before trial, the court was justified in striking the notice and excluding any evidence relating to an alibi defense. *Stapp v. State*, (1972) 259 Ind. 330, 333, 287 N.E.2d 252, 253–54; *Fields v. State*, (1977) Ind.App., 367 N.E.2d 36, 38.

## III.

■ Count eight of the information charged appellant Mitchell with being a habitual criminal. He was arraigned on that charge and entered a plea of not guilty. On August 19, 1976, nine months after the original charge was filed, Count eight was amended by the State. The amended count charged appellant with having been convicted of and having served sentences for crimes different from those alleged in the original Count eight. Due to an apparent oversight, appellant was never actually arraigned on this amended count before trial.

The court discovered this omission after the jury had returned its guilty verdict on the four substantive charges and when all were ready to proceed on the bifurcated habitual criminal phase of the trial. The court arraigned appellant on this charge at that time. Though the record was poorly transcribed, it appears that Mitchell's only complaint to the court was that he had to go to trial with his present attorney, rather than the one he asked the court to allow him to substitute at the beginning of the trial. He then entered a plea of not guilty to the habitual criminal charge. Neither he nor his attorney objected to the fact that the arraignment came at this point rather than prior to trial. The court therefore went forward with the trial on this charge.

This Court established the procedure to be followed in a habitual criminal charge in *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830. The procedure prescribed in *Lawrence v. State* calls for arraignment on all charges to take place before trial, and for bifurcated proceedings, so that the previous convictions of the defendant are not presented to the jury until after they have found him guilty of the substantive charges. *Id.* at 314–15, 286 N.E.2d at 835. We still believe this is the proper procedure to use.

However, it appears from the record in this case that the failure to arraign the defendant on the amended Count eight was an oversight which was not discovered until evidence under this count was ready to be presented to the jury. Further, all concerned, including the defendant and his attorney, were ready to go forward on the count as it then read. Appellant was not put in a position of being forced to trial without being able to adequately consult with counsel or defend against the charges. In other words, it does not appear that appellant was prejudiced in any way by this procedure. Further, although appellant himself did request a continuance at this point, the request was based on the same reason he had raised at the beginning of the trial concerning the selection of a different attorney. Appellant's counsel indicated he

was aware of the charges and was prepared to go ahead with the proceedings. Counsel did not request a continuance in order to prepare to meet the allegations of the amended information. Accordingly, we find no error here.

### IV.

During direct examination by his attorney appellant testified to the crimes resulting in his previous convictions. He testified in some detail as to crimes of theft and forgery, of which he had previously been convicted and for which he had served time. His attorney asked him if any of these crimes had involved violence, and appellant answered that they had not. Mitchell further stated, in answer to a question from his counsel, "As I know of I've never committed a crime of violence." Record at 1337.

During cross-examination, the prosecutor asked appellant if it were true that he had been arrested and charged with assault and battery with intent to kill. The defendant testified that he was charged with that crime but was convicted of malicious trespass. The following exchange then took place:

Mr. Szakaly: Okay, Bobby, you just told us about the underlying circumstances on your petit larceny and your forgery, tell us about the underlying circumstances on your conviction for malicious trespass in 1972.

Mr. Mitchell: I was with another guy and he took a shotgun and shot some windows out of a man's house and he died the day we got thrown in jail and I got stuck with it.

Mr. Szakaly: No further questions.

Record at 1345. Appellant claims the trial court erred in admitting this testimony.

■ Ordinarily, the general veracity of a witness may be impeached in this situation only by showing that he has been convicted of treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, or willful and corrupt perjury. *Ashton v. Anderson*, (1972) 258 Ind. 51, 62–63, 279 N.E.2d 210, 216–17; *Lewis v. State*, (1973) Ind.

App., 299 N.E.2d 193. *See Baker v. State*, (1978) 267 Ind. 643, 372 N.E.2d 1174. In this case, however, the cross-examination of appellant was not directed to impeaching his general veracity or credibility, but toward evidence presented by him, in defense to the charge of being a habitual criminal, that he had never committed a crime of violence. The State contends the prosecution therefore had a right to cross-examine him on that issue with respect to the above conviction of malicious trespass. Since the defendant opened this door on direct examination with the intent of making his position more presentable to the jury, it appears the State's position is well taken. The defendant himself discussed at length his past crimes and characterized all of them as non-violent. The testimony elicited by the prosecutor on cross-examination was therefore proper. *Teague v. State*, (1978) Ind., 379 N.E.2d 418, 425; *Fortson v. State*, (1978) Ind., 379 N.E.2d 147, 153.

### V.

■ Appellant contends that the imposition of a life sentence for being a habitual criminal is cruel and unusual punishment as applied to him, because none of the three felonies of which he was convicted involved violence or vast sums of money. We have recently laid this issue to rest in *Norris v. State*, (1979) Ind., 394 N.E.2d 144, 150, and *McMahan v. State*, (1978) Ind., 382 N.E.2d 154, 157. In *McMahan*, the defendant was convicted of forgery on three separate occasions, and violence was not involved. In *Norris*, the defendant was convicted twice of theft and once of unlawfully injuring property. Allegedly none of these crimes involved violence. However, in both of these cases, we specifically rejected the argument appellant makes here, and we reaffirm our position in this case.

### VI.

■ Appellant was found not guilty of second-degree burglary of the Brown County Inn, but was found guilty of theft of the television sets that were placed in the

woods. The television sets were removed the next day by appellant and his co-defendant, Stewart. The information alleged that the theft of the sets occurred at the Brown County Inn. Appellant now claims there was not sufficient evidence that he committed the crime of theft from the Brown County Inn. He urges that the evidence showed, if anything, that he took the television sets from the woods where he had temporarily stored them. It is his claim that since the jury found him not guilty of second-degree burglary of the Inn, he could not then be found guilty of a theft committed at the Inn under the facts in evidence. However, this Court recently noted:

"To obtain a conviction for burglary, it is not necessary for the State to prove that defendant committed theft or any other felony since burglary is complete[d] upon breaking and entering with mere attempt to commit a felony. Similarly, a conviction for theft may obtain without proof of a breaking and entering. Thus, the two offenses are not the same and separate sentences may be imposed for each."

*Elmore v. State*, (1978) Ind., 382 N.E.2d 893, 898, *overruling Sansom v. State*, (1977) 267 Ind. 33, 366 N.E.2d 1171, and *Jones v. State*, (1977) 267 Ind. 205, 369 N.E.2d 418. Thus, the offense of theft is not "merged" into the offense of burglary. *Id.*

■■ Therefore, the jury's finding that appellant was not guilty of second-degree burglary of the Brown County Inn did not necessarily preclude a finding that he was guilty of theft of the television sets from the Inn, if there was sufficient evidence from which the jury could make such a finding. The evidence showed that appellant Mitchell and his co-defendant, Stewart, were in Mitchell's car near the Brown County Inn. The car was stuck in the mud on the baseball diamond, and required a tow truck to be removed. The break-in of the Inn's maintenance shed near the baseball diamond was later discovered. The door to the shed showed signs of forcible entry. Two sets of footprints were found near the shed, and were tracked to the missing television sets in the woods. More footprints, tire tracks, and another televi-sion set were found in the vicinity of the baseball diamond. Appellant and Stewart were observed the next evening exerting control over the sets and loading them onto a pick-up truck. Tools found in Mitchell's automobile matched the markings found at the maintenance shed, and mud samples taken from the car indicated the car had been on the baseball diamond. The television sets were found on the property of appellant's uncle. The bolt cutters which were found bore green paint from the wire cut at the maintenance shed. There was, then, adequate evidence from which the jury could find beyond a reasonable doubt that defendant was guilty of theft from the Brown County Inn.

### VII.

■ Count three of the information charged appellant with having committed automobile banditry by escaping from the scene of the theft in his car. Ind.Code § 35–12–2–1 (Burns 1975), states:

"If any person or persons shall commit or attempt to commit a felony, having at the time on or near the premises where such felony is attempted or committed, an automobile, . . . by the use of which he or they escape, attempt to escape or intend to escape, . . . he, they and each of them shall be guilty of automobile banditry . . . ."

Appellant's argument on this issue is predicated on the argument presented in issue VI above: if he could not be found guilty of theft, then he could not be found guilty of automobile banditry, since the latter charge must be shown to have accompanied another felony. In view of our finding in Issue VI, appellant's argument must fail here also. The evidence recited in Issue VI above is sufficient to support the jury's finding beyond a reasonable doubt that appellant committed the crime of automobile banditry in connection with the theft from the Brown County Inn.

### VIII.

Count four of the information charged appellant with automobile banditry through

the use of the pick-up truck on the following night. Again, appellant predicates this claim on the issue presented under Issue VI to convince us there was insufficient evidence from which he could have been found guilty of automobile banditry under Count four. The evidence recited above brings us to the same conclusion with respect to this issue. We think there was sufficient evidence from which the jury could have found that appellant committed the crime of automobile banditry in the commission of the theft by the use of the pick-up truck.

## IX.

Finally, appellant alleges the evidence was not sufficient to support the conviction for possession of burglary tools. At the time of the commission of this crime, the applicable statute was Ind.Code § 35–13–8–1 (Burns 1975), which stated:

"If any person previously convicted of a felony be found having in his possession any burglar tools or implements with intent to commit the crime of burglary, such person shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned not less than (2) two years nor more than (14) fourteen years, and the possession of such tools or implements shall be prima facie evidence of the intent to commit burglary."

Appellant relies on his acquittal of second-degree burglary in this case to defeat his conviction of this charge. He urges that the requisite intent under this statute was eliminated by his acquittal of the only burglary with which he was charged. Therefore, this argument runs, where a jury has decided that defendant did not commit the specific burglary, the inference of burglarious intent is conclusively eliminated.

Appellant's argument must be rejected, because the statute does not require that he be found guilty of burglary as a condition to being found guilty of possession of burglary tools. The State does not have to prove that the defendant intended to commit a specific burglary. The statute provides that possession of these tools by one previously convicted of a felony raises the inference that the person intends to commit a burglary with them. In addition, the record conclusively showed that appellant Mitchell had previously been convicted of the offense of jail-break. This crime is a felony under our law. Ind.Code § 35–21–8–1 (Burns 1975). We think this evidence, along with other evidence discussed above, is sufficient to support the jury's finding that appellant was guilty of possession of burglary tools.

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.