William A. DORTON and John Munde, a/k/a John Daniel Muha, Appellants,

v.

STATE of Indiana, Appellee.

No. 380S62.

Supreme Court of Indiana.

May 6, 1981.

Harriette Bailey Conn, Public Defender, Kurt A. Young, and David P. Freund, Deputy Public Defenders, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellants were charged by information with the crime of Burglary, a Class B felony, on November 14, 1977. Dorton was also charged with being an Habitual Offender. After trial by jury, the appellants were found guilty of Burglary on November 17, 1978. On November 21, 1978, in the sentencing phase, the jury found Dorton to be an habitual offender.

Dorton was sentenced to twenty years, to which were added thirty (30) years. Munde was also sentenced on November 30, 1978, to a period of ten (10) years. Appellants appealed from these convictions. On March 6, 1980, the Indiana Supreme Court ordered Munde's appeal consolidated with Dorton's appeal.

Appellants present eighteen allegations of error for our review concerning the denial of motions for mistrial and a change of venue, the admission of exhibits, the possible prejudice of jurors, the denial of motions to correct errors, the sufficiency of the evidence and sentencing.

On November 9 and 10, 1977, Detective Gary Howe of the Michigan State Police received telephone calls tipping him to the planned commission of a burglary by Raymond Monasterski, Albert Iafrate, William Dorton, and John Munde. Michigan State Police set up a complex surveillance network which originated near Detroit, Michigan at the home of Raymond Monasterski on November 11. Monasterski was followed as he left his home around noon. Monasterski picked up Albert Iafrate and the two men were followed by police helicopter and several unmarked Michigan State police vehicles to Elkhart, Indiana.

Upon arriving in Elkhart, Monasterski and Iafrate stopped at a motel and entered room 115. There they met William Dorton and John Munde. The four men then left the motel in Munde's maroon Cadillac and drove south toward Goshen, Indiana. Michigan authorities contacted Indiana authorities, who joined in the surveillance of the Munde automobile. Munde's maroon Cadillac was observed as it drove into a residential section of Goshen and cruised an area

within six or eight blocks of the burglary scene for nearly one hour. During most of the time that Munde's car was under surveillance, Munde was the sole occupant of the vehicle. Police then observed Munde's car stop and the lights went off. Less than a minute later, the lights came back on and the Cadillac was driven away. Four persons were then observed inside the car.

Surveillance officers then looked for the break-in site. Heavy snow falling in the early evening hours of November 11, 1977, obscured any footprints, so officers made a house-to-house search. Several homes with partially open garage doors were investigated. At all but one, the residents were at home and reported no criminal activity. A home located at 1912 Cheryl Street was dark and appeared unoccupied when police noticed its garage door partially open. Police looked into a window of the dark home and noticed that the household was in a state of disarray. The door to the house from the garage was unlocked and showed signs of forcible entry. The entire house had been ransacked.

Other surveillance officers who had observed Munde's car leave the scene followed the Cadillac back toward Elkhart. As the car entered Jackson Street in Elkhart, it began to accelerate. With police in close pursuit, a canvas bag was then seen thrown from the right front window of Munde's car. The canvas bag was retrieved by police after it had struck a guardrail along Jackson Street and split open. Numerous items of men's and women's jewelry, currency and coins were found with the bag. These items were retrieved from the mud and snow in darkness by police and were turned over to Elkhart Police immediately.

Munde's Cadillac was forced to the side of the road and Munde, Dorton, Iafrate and Monasterski were arrested. Police found a programmable police-band scanner in the front seat. Dorton was searched upon his arrest and was found to have two short nylon stockings in his pocket.

Two of the suspects pleaded guilty to burglary and were sentenced. One of

them, Albert Iafrate, testified at the trial of Dorton and Munde that the purpose of his trip from Detroit to Goshen was to "burglarize a house." Iafrate testified that Munde had chosen the potential burglary site before Iafrate's arrival and that Munde "knew where we were going."

## I.

Appellants' first claim was that the trial court erred in refusing to grant a motion for mistrial after refusing to require the State to disclose the identity of the man who had tipped Michigan police that a burglary was to take place.

Apparently the tipster was an anonymous telephone caller. The tip merely led to the surveillance of the activities of several men. Officer Howe was called on November 9 by an informant he knew who told him another person had told him that a burglary was going to occur. The first caller said the other person would be calling Howe and would identify himself with a number and give Howe the information. Officer Howe did not know the identity of this individual. The caller told Howe that Monasterski, Iafrate, Dorton and Munde would be travelling in two vehicles to somewhere to commit a burglary. Howe testified that he was still using the first informant and that disclosure of his identity would impair an ongoing investigation. He also stated that he believed the defendants posed a danger to the first informant. The trial court had a hearing out of the presence of the jury, heard argument and ruled that Howe did not have to disclose the name of the informant, known to him, who was not the caller who gave the information. There was no showing that disclosure of his mane would have been essential to a fair determination of this case and the court's failure to grant a mistrial was not error.

Appellant argues, citing *Roviaro v. United States*, (1957) 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 and *Glover v. State*, (1969) Ind., 251 N.E.2d 814, that the State should have been compelled to disclose the name of the "informant." These cases have no application to this situation. Here the name of the

anonymous tipster was unknown even to the Michigan authorities, and this individual was not paid for his information. He was not a participant in the crime and was not a material witness. Therefore, his credibility was not in issue. Here, the testimony merely revealed that the surveillance of the men was undertaken by reason of his tip. His assistance merely served to alert the police to a possible crime yet to be perpetrated. The disclosure to the jury of the fact that police had these subjects under surveillance because of a tip had no bearing upon any issue. The testimony implicating the defendants would have been the same, had it been mere chance that the police witnessed the crime. In *Glover, supra*, a State's witness on redirect examination testified that he had the assistance of an informer in establishing both the guilt and the identity of the accused. *Glover*, therefore, has no application to this situation. *McCulley v. State*, (1971) 257 Ind. 135, 272 N.E.2d 613; *Carey v. State*, (1979) Ind.App., 389 N.E.2d 357; *Garner v. State*, (1975) Ind.App., 325 N.E.2d 511; *Ludlow v. State*, (1973) Ind.App., 302 N.E.2d 838. *See also Lewandowski v. State*, (1979) Ind., 389 N.E.2d 706. The trial court did not err in overruling defendants' motion for mistrial.

## II.

Appellants next claim that the trial court erred in refusing to grant a change of venue because of pre-trial publicity. A hearing was held on the motion on December 15. The defendants introduced numerous newspaper articles which appeared in local papers in November of 1977, immediately following their arrest. Several articles referred to other burglaries in Indiana and in Michigan in which these individuals were suspects, and referred to them as the "Wrecking Crew" and stated that they were from out of State and that they had been specializing in home invasions of Oriental businessmen. Another story also stated that Munde and Monasterski were charged with murder in Michigan and that a Detroit homicide detective had said that the four may have been responsible for as

many as 100 robberies each year in the Detroit area. Appellants claim that this sort of publicity poisoned the minds of those who were to make up the jury in this case.

At the hearing on the defendants' motion for change of venue from the county on December 15, 1977, the defendants stood on their submission of the newspaper articles and presented no other evidence to show the existence of a pervasive atmosphere of prejudice arising from this pre-trial publicity. The trial court denied the motion.

■ The grant of a change of venue from the county in all criminal cases, except those punishable by death, is discretionary with the trial court, and the reviewing court will not reverse the trial court's ruling unless there is a clear showing of an abuse of discretion. *Pallett v. State*, (1978) 269 Ind. 396, 381 N.E.2d 452; *Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323. In order for a defendant to establish good cause for a discretionary change of venue, he must produce evidence of community bias or prejudice sufficient to convince the trial court that he cannot obtain a fair trial in that county. *Dickens v. State*, (1973) 260 Ind. 284, 295 N.E.2d 613.

Here the publicity was typical newspaper coverage at the time of the arrest of the subjects. Nearly eleven months later, on November 13, 1978, *voir dire* of the prospective jurors commenced. During all of the *voir dire* counsel for Defendant Munde asked if any of the entire panel had read about the case in the newspaper. ·No one responded. He also asked if they had any difficulty with preconceived notions, publicity or prejudices. There was no response. Counsel for Defendant Dorton asked during *voir dire*: "Do you know of any—do you have any knowledge of this case at all? Have you read anything in the paper about it? The juror replied: 'No.' "

These three questions were the only mentions made of pre-trial publicity. The defendants did not renew their motion for change of venue after *voir dire* of the jury. Neither defendant contends here that the *voir dire* disclosed actual juror prejudice because of the pre-trial publicity. Having

shown no prejudice, and thus no harm, the defendants have failed to show an abuse of discretion by the trial court, in overruling their motion for a change of venue from the county. There is no error here.

### III.

■ Appellants next claim that it was error to admit State's Exhibits 16 through 19 because a sufficient chain of custody had not been established.

State's Exhibit 16 was a canvas coin sack. State's Exhibit 17 was a bicentennial proof set encased in a folder. State's Exhibit 18 was a gold bracelet with gold and jade charms. State's Exhibit 19 was a gold bracelet with the name "Alice" formed in gold wire and incorporated into the bracelet. All of these exhibits were identified in court by Officer Ling as the same items he retrieved from the snow and mud after they had been thrown from the window of Munde's Cadillac shortly after the burglary. Exhibits 17, 18, and 19 were identified by the victim as her property and as having been in her locked home before the burglary.

■ These items are all hard physical evidence whose characteristics were capable of eyewitness identification. It is a sufficient foundation for the introduction of such items that a witness identify the items and that the items have relevance to issues of the case. *Walker v. State*, (1980) Ind., 409 N.E.2d 626; *Duncan v. State*, (1980) Ind., 409 N.E.2d 597; *Gee v. State*, (1979) Ind., 389 N.E.2d 303. These items were clearly relevant to prove that an item of value had been taken from the victims. The trial court properly admitted these exhibits into evidence without a showing of an extensive chain of custody for each exhibit.

### IV.

Appellants complain that the conduct of the prosecutor in displaying items which were not in evidence to the jury amounted to misconduct and prejudiced the defendants. Appellants cite us to their objection made to certain exhibits. However, these

exhibits, State's Exhibits 17, 18, and 19, were admitted into evidence and were discussed in Issue III, *supra*. The other exhibits mentioned in appellant's brief were Exhibit 20, (a bag of jewelry), Exhibit 21, (a bag of currency), Exhibit 22, (a bag of coins), Exhibit 23, (a bag of jewelry), Exhibit 24, (bags of coins), and Exhibit 25, (photographs of the currency and coins). Officer Fishburn and Officer Petgen were asked to identify these exhibits. These exhibits were ultimately excluded from evidence.

▆ Appellants cite no authority for their claims of misconduct and show no prejudice to them from any "display" of these items. The actions of the prosecutor here in displaying these items to the witnesses were legitimate and permissible attempts to have these exhibits identified by the witnesses. *Ballard v. State*, (1974) 262 Ind. 482, 489, 318 N.E.2d 798, 803. The trial court instructed the clerk to remove the inadmissible items from the courtroom and admonished the jury to disregard the unadmitted exhibits. This admonishment to the jury is adequate. *Hill v. State*, (1979) Ind., 390 N.E.2d 167, 171.

V.

On November 8, 1978, Dorton's counsel filed a "Motion to Continue" with the trial court, stating that he had not prepared for trial in the mistaken belief that Dorton had agreed to a plea bargain and that insufficient time remained for him to prepare. The motion was denied on November 9. Dorton renewed the motion on the date of trial, November 13, and after a hearing the trial court again denied the motion. Dorton alleges prejudice from the Court's denial, claiming that he did not present any evidence on his behalf and that he was unable to effectively cross-examine State's witnesses against him. He claims that therefore he was denied the effective assistance of counsel.

At the hearing it was revealed that Mr. Dorton had retained Mr. McLaughlin approximately a year prior to this hearing. Since that time he and his wife had separated and he claimed that he had no money to employ counsel. McLaughlin stated that he had reason to believe that a plea bargain would be acceptable to Dorton, and that Dorton stated he had no reason to believe that one would be acceptable to him. In other words, they claim a misunderstanding. The court determined that Dorton was without funds to hire an attorney and appointed McLaughlin to defend Dorton, and denied the Motion for Continuance.

▆ The ruling on a motion for continuance not based upon statutory grounds is within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Himes v. State*, (1980) Ind., 403 N.E.2d 1377. In order to demonstrate an abuse of this discretion, the record must reveal that the defendant was prejudiced by the failure to grant the continuance. *Vaughn v. State*, (1978) 269 Ind. 142, 378 N.E.2d 859; *White v. State*, (1975) 263 Ind. 302, 330 N.E.2d 84.

▆ The record reveals that Dorton had been represented by his defense counsel for one year before the trial. The motion for continuance was filed five days before the trial was to begin. His motion was based on an alleged misunderstanding regarding his plea. Dorton asserts that prejudice was evident because he did not present any evidence on his behalf and that he was unable to effectively cross-examine State's witnesses against him. The record reveals that by agreement of counsel any objection made by either co-defendant would be considered to be made by both co-defendants. Co-defendant Munde was represented by separate counsel who was prepared for trial and thus Dorton was protected in preserving error at trial. It is evident throughout the transcript that both defense counsel cross-examined the State's witnesses and participated in *voir dire* of the jury panel. Both counsel filed similar motions to correct error. There is no showing that Dorton was prejudiced by the court's denial of his motion for continuance.

### VI.

■ Appellants next allege that the trial court erred in denying a motion to strike the jury panel. During *voir dire* a prospective juror asked the following question:

"I'd like to ask a question concerning the—is this a charity case or are these people paying their own way on the defense? Are we, the taxpayers—is our money being used to pay for the defense of this case?"

The court responded:

"Unfortunately, something—you can ask the question but you are not entitled to an answer."

Appellants claim that they were placed in substantial peril by this question because the jurors might have resented paying both to prosecute and to defend this case, and that the trial judge *sua sponte* should have taken some step to cure any prejudice. They cite *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819 for this claim.

*Lindsey v. State, supra*, dealt with newspaper publicity during the course of the trial which was read by one of the jurors. Here the question asked occurred during *voir dire* of the entire group of prospective jurors. This juror was later stricken from the panel and did not serve on the appellant's jury. Here, it is also apparent that the question was not answered as to who was paying for the defense, and there was no prejudice from the judge informing the juror that such a question would not be answered. It is mere speculation and conjecture that the jurors were prejudiced by this question. Appellants were not prevented from questioning jurors on *voir dire* to ascertain the existence of any prejudice. Having failed to do so, they cannot now argue on appeal that they were prejudiced by their own failure. *Smith v. State*, (1960) 241 Ind. 1, 168 N.E.2d 199. *Lindsey, supra*, requires a showing by appellants that they were placed in a position of substantial peril and that any remark actually influenced the jurors who heard the case. There is no such showing here.

### VII.

■ Appellant Munde argues that his pre-trial motion for severance was erroneously denied. He failed to renew his motion during the trial.

Ind.Code § 35–3.1–1–12(b) (Burns 1979 Repl.) requires that such a motion be renewed during trial or the right to severance is waived. Appellant acknowledges this requirement but argues that such a requirement should be viewed by this court as directory in nature rather than mandatory. No argument or legal authority as required by Ind.R.App.P. 8.3(A)(7) is presented. There is no merit to this allegation.

### VIII.

■ Appellants argue that an affidavit filed by Munde alleging that he overheard a discussion regarding the use of an electronic surveillance device by police should have resulted in a full evidentiary hearing on this issue. Police authorities denied under oath the use or knowledge of the use of any electronic listening devices in the investigation. Affidavits filed by Officer Michael Kettlebar and Trooper Larry Fishburn directly contradict and deny the allegations in Munde's affidavit. Gary Howe, the head of the Michigan State Police surveillance team, testified that no sound surveillance devices were employed by Michigan authorities on the date of the offense. The trial court was presented with sufficient contradictory evidence at the hearing on Munde's motion to correct errors to support the court's decision to deny Munde's allegation of the illegal use of electronic surveillance devices by police.

Defendants cite us to 18 U.S.C. § 2515 which provides as follows:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if

the disclosure of that information would be in violation of this chapter.

The transcript of the trial indicates that no evidence or testimony was presented which could be said to have been derived from the use of intercepted oral communications. There was no violation of 18 U.S.C. § 2515. No relevant legal authority is otherwise presented in support of this argument and therefore nothing is presented for this Court's consideration on appeal. *Guardiola v. State,* (1978) 268 Ind. 404, 375 N.E.2d 1105.

### IX.

Defendant Dorton argues that the Indiana Habitual Offender statute is unconstitutional in that the defendant is being subjected to double punishment for the same offense. This precise issue has been considered and has been decided adversely to the defendant's position. *Hall v. State,* (1980) Ind., 405 N.E.2d 530; *Wise v. State,* (1980) Ind., 400 N.E.2d 114; *Howard v. State,* (1978) 268 Ind. 589, 377 N.E.2d 628.

Defendant also argues that even though this issue has been decided adversely to him that these decisions are based on erroneous and faulty reasoning since, "[i]f the habitual charge is merely a sentence enhancer, there is no need for a jury trial and/or proof beyond a reasonable doubt." This court has held on the issue of whether the habitual offender proceedings constituted two jury trials and was therefore improper that:

> "The habitual offender procedures do not unconstitutionally subject the appellant to two trials."

*Ferguson v. State,* (1980) Ind., 405 N.E.2d 902. There is no error on this issue.

### X.

Appellant Dorton claims the court erred in permitting the same jury which convicted him on Count I to hear the Habitual Offender Charge under Count II. Dorton argues that he was denied his constitutional right to trial by an impartial jury by being forced to face the same jury in his habitual offender proceeding which had

convicted him of burglary. This issue has also been considered recently and has been decided adversely to the appellant's position. *Ferguson v. State,* (1980) Ind., 405 N.E.2d 902; *Jameison v. State,* (1978) 268 Ind. 599, 377 N.E.2d 404. We reaffirm the holdings of these cases.

### XI.

Appellant Dorton next alleges that the State's procedure in arraigning him on the habitual criminal offender count of the information just prior to the habitual offender proceeding hampered him in preparing his defense to the habitual charge and did not give his attorney adequate time in which to investigate the circumstances surrounding the amended habitual allegations.

The State first filed the habitual offender charge against Dorton on November 22, 1977. The information specified that:

> "William A. Dorton did, then and there unlawfully commit the crimes contained and described in Count I, after having been previously convicted and sentenced on two (2) prior unrelated felony criminal offenses, to-wit: the said William A. Dorton, having been heretofore convicted and sentenced of the criminal offense of Uttering & Passing; and the said William A. Dorton, having been heretofore convicted and sentenced of the criminal offense of Attempted Breaking and Entering; contrary to the provisions of Burns Indiana Statutes Annotated, IC 35–50–2–8."

The Court informed Dorton on November 23, 1977, the day he was arraigned on the burglary charge, that the State had filed the habitual offender charge. On November 23, 1977, each of the defendants, Raymond Monasterski, William A. Dorton and John D. Muha waived formal arraignment and entered a plea of not guilty.

The State filed its amended Count II charging Dorton with being an habitual offender on October 27, 1978. On November 8, 1978, Dorton was in court for arraignment on the amended habitual charge. He was arraigned again on this charge just prior to the habitual phase of the trial. The

amended information contained additional details such as the cause numbers, specific dates, and counties of the charged felonies.

Dorton's precise objection was made to the time which had elapsed from the time he was arrested to the time he was arraigned on the habitual criminal charge.

In *Mitchell v. State*, (1979) Ind., 398 N.E.2d 1254, this Court considered the question of the effect of an amended count on which an appellant was never actually arraigned before trial. The court discovered this omission after the jury had returned its guilty verdict on the substantive charges and when all were ready to proceed on the habitual criminal phase of the trial. The court arraigned the appellant at that time. In *Mitchell, supra,* we reemphasized that the proper procedure to be followed in a habitual criminal charge was prescribed in *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830 and called for arraignment on all charges to take place before trial and for bifurcated proceedings, so that the previous convictions of the defendant are not presented to the jury until after they have found him guilty of the substantive charges. However, no reversible error was found where it did not appear that the defendant was prejudiced.

Here, it is obvious from the record that Dorton was aware for nearly a year before trial that the State was charging him with being an habitual offender. The defendants specifically waived arraignment on November 23, 1977. The amended count was filed on October 27, 1978. The crimes charged were the same as those in the original count. On November 8, 1978, Dorton was arraigned on this amended count. He was arraigned again prior to the habitual phase of the trial. Dorton cannot now maintain on appeal that he was surprised or that his substantial rights were prejudiced. It does not appear that he was prejudiced in any way. In fact, his only objection was that he should have been arraigned immediately after arrest, rather than any allegation of prejudice. We find no error on this issue.

## XII.

■ Appellant Dorton next alleges that the Court erred in admitting Exhibits 42 and 43 into evidence. He argues that the State's Exhibits 42 and 43 were not connected to him and were therefore improperly admitted.

State's Exhibit 42 is a certified fingerprint card taken of a William Albert Dorton, a white male, weighing 156 pounds, 69 inches tall, with brown hair, hazel eyes and birth date of 1–15–35. The fingerprints were taken after an arrest on July 9, 1970, listed as "U & P/Forgery." State's Exhibit 43 is a certified fingerprint card taken of a William Dorton, a white male weighing 156 pounds, 68½ inches tall with brown hair, hazel eyes and a birth date of 1–15–35. State's Exhibit 43 was prepared upon receipt of a William Dorton at the Jackson State Prison on November 13, 1974, to serve a sentence for "Att B & E."

Both exhibits were identified by Dallas Piper, Administrative head of the identification section of the Michigan State Police Department. These exhibits were compared to a set of fingerprints taken of Dorton at his arrest for the burglary charge here by an Indiana State Police fingerprint expert, Frank Mathews. Mathews testified that all three sets of fingerprints were made by the same person.

■ These exhibits were clearly connected to Dorton and there was no error in their admission. Evidence is generally admissible if it has a tendency to prove or disprove a material fact. *Johnson v. State,* (1980) Ind., 400 N.E.2d 132; *Minton v. State,* (1978) Ind., 378 N.E.2d 639. We have previously held that any evidence that connects the defendant with the crime is admissible. *Hill v. State,* (1979) Ind., 394 N.E.2d 132, 134; *Wilson v. State,* (1978) Ind., 374 N.E.2d 45; *Pullins v. State,* (1970) 253 Ind. 644, 256 N.E.2d 553. These exhibits were clearly connected to the defendant and there was no error in their admission.

## XIII.

■ Appellant Dorton next alleges that the court erred in admitting State's Exhib-

its 40 and 41 into evidence and that they were not properly connected to him. Exhibits 40 and 41 were commitment records pertaining to two former felony convictions. Exhibit 40 is a collection of records from Michigan, including authenticated court records from the Circuit Court of Macomb County, Michigan, and include an amended information charging William Albert Dorton with having uttered and published or attempting to utter and publish a forged check in Sterling Heights, Michigan, on April 23, 1970. Exhibit 40 also included a commitment paper showing that William Albert Dorton was convicted of and sentenced to the Jackson State Prison for three to five years, and that William Albert Dorton was received at the Jackson State Prison on October 29, 1971.

Exhibit 41 consisted of authenticated court records from the Circuit Court of Macomb, Michigan, including an Amended information charging William Albert Dorton with breaking and entering or attempting to break and enter a dwelling house with the intent to commit a larceny on March 14, 1973. Exhibit 41 also included a commitment of William Dorton showing a conviction in 73–366 in the Circuit Court of Macomb County, a sentence of forty (40) to sixty (60) months in the Jackson State Prison and that William Dorton was received at the Jackson State Prison on November 15, 1974.

Dorton claims that these exhibits were not linked or connected to him and were improperly admitted since there was no one from Macomb County, Michigan present to identify him as the Dorton who was convicted there in 1970 and in 1974.

These exhibits were linked to the defendant by fingerprint records, Exhibits 42 and 43, discussed under Issue XII, *supra*, accompanying these commitment records. The fingerprint records were determined to be fingerprints of defendant Dorton and the commitment records accompanying the fingerprint records were connected to Dorton. Each bore his name and was accompanied by records of his fingerprints, and each exhibit was relevant to prove that Dorton

had accumulated two prior unrelated felony convictions. Any evidence that connects the defendant with the crime is admissible. *Morris v. State*, (1980) Ind., 406 N.E.2d 1187; *Hill v. State*, (1979) Ind., 394 N.E.2d 132. There was no error in the admission of these exhibits.

### XIV.

Appellant Dorton next claims that the evidence presented by the State at his habitual offender proceeding was insufficient to prove beyond a reasonable doubt that he had accumulated two prior unrelated felony convictions. Specifically, he argues that there was no connection between the fingerprints of the individual in State's Exhibit 42 and the conviction records of William Albert Dorton in State's Exhibit 40. Dorton claims that Exhibit 42, the fingerprint card from the Sterling Heights, Michigan, Police Department, is not connected to the authenticated papers in Exhibits 40 or 41 except for the name on the heading. Since the fingerprints were taken at the time of arrest rather than at the time of commitment, he claims that there is no connection to these papers. He is claiming that even though Exhibit 40 shows that a William Dorton was committed to prison, there was nothing to show that it was the same William Dorton whose fingerprints were taken on Exhibit 42, who was committed. There is no merit to this claim. The fingerprints on Exhibit 42 were identified as those of Dorton. His address was listed as "114 Water St., Oscoda, Michigan." The prosecutor's information contained in State's Exhibit 40 lists "William Albert Dorton, late of the city of Oscoda in the County of Iosco and State of Michigan ..." as having committed the crime of attempted uttering and publishing a forged instrument. The prosecutor's information was attached to the commitment records and both are accompanied by the certification of authenticity from the clerk of the court where these records are kept.

All that is required of this circumstantial evidence to sustain a conviction is that an inference might reasonably be

drawn from it which supports the finding of the jury. *Parks v. State,* (1979) Ind., 389 N.E.2d 286; *Jones v. State,* (1978) 268 Ind. 640, 377 N.E.2d 1349. The evidence was sufficient for the jury to have found beyond a reasonable doubt that William Albert Dorton had been twice convicted, sentenced, and imprisoned for felonies.

## XV.

■ Dorton next argues that the only direct evidence that he took part in the actual burglary was provided by Iafrate's self-serving testimony and is insufficient to support the jury's verdict that he was guilty of burglary. Dorton asserts that since Iafrate received probation from the State for his testimony, it was unreliable. Iafrate was given probation for his agreement to testify, not for his testimony. Iafrate was arrested at the same time and under the same circumstances as Dorton. He pleaded guilty and received a two-year sentence and was given probation. Part of Iafrate's plea bargain agreement was that he would agree to testify. The State made no agreement contingent upon the content of his testimony. Iafrate had already been sentenced at the time of his testimony.

Iafrate testified that he went to Indiana to commit a burglary and that Dorton was involved directly in the commission of that burglary. This testimony was corroborated by other evidence at trial. Dorton accompanied Iafrate to the scene of the burglary. Four persons were seen in Munde's car in the area of the burglary and one of those persons was Dorton. Shortly thereafter only Munde was seen in the car. Then all four persons were again seen in Munde's car. Police followed the car with all four persons inside. Objects taken from the burglarized residence were thrown from the car shortly before it was stopped. Dorton was in Munde's car and was arrested when the car was stopped by police. Two of the four defendants confessed to the burglary. The evidence presented was such that a reasonable trier of fact could have found that Dorton was guilty beyond a reasonable doubt.

## XVI.

Appellant Munde argues that there was no evidence that he did anything other than drive his car on the evening of November 11, 1977, and that therefore the evidence was insufficient to support his guilty verdict.

■ Indiana Code § 35–41–2–4 (Burns 1979 Repl.) provides as follows:

"A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

(1) Has not been prosecuted for the offense;

(2) Has not been convicted of the offense; or

(3) Has been acquitted of the offense."

Evidence was presented that Munde drove and owned the automobile that brought the defendants to the scene of the burglary. He drove around a six-to-eight block area near the burglary for nearly an hour while the burglary was committed. He was driving the car that then left the scene and attempted to flee from pursuing police vehicles. Items which had been stolen from the burglarized dwelling were thrown from his car. Iafrate testified that Munde decided which home to burglarize and had already investigated the location of the burglary before the four met in Elkhart. While presence at the commission of a felony and association with the principals are not in themselves sufficient facts to constitute one an accessory, they are circumstances which a jury may consider in determining whether appellant knowingly assisted the burglars. *Pinkler v. State,* (1977) 266 Ind. 467, 364 N.E.2d 126. Moreover, presence at the scene in connection with other circumstances tending to show participation in the crime may be sufficient to sustain a conviction. *Wright v. State,* (1977) 266 Ind. 327, 363 N.E.2d 1221; *McGill v. State,* (1969) 252 Ind. 283, 247 N.E.2d 514. The evidence as set out above showing that Munde knowingly aided three other men to choose, arrive at, and flee from the site of a burglary was sufficient to show that Munde

knowingly aided in the commission of a burglary of a dwelling, and the jury's verdict finding him guilty of that burglary will not be disturbed.

## XVII.

■ Appellant Dorton next argues that his total sentence of twenty years for burglary plus thirty years for his habitual offender status is "manifestly unreasonable in light of the nature of the offense and the character of the offender," citing us to the Rules for the Appellate Review of Sentences, Rule 2.

The trial court held a sentencing hearing and stated the reasons for imposing the defendant's sentence. The court found aggravating circumstances and found that the aggravating circumstances outweighed any mitigating circumstances. Dorton argues that the judge should not have so found and argues that the consideration of prior felonies amounts to his being punished twice for the same offense. This issue was discussed in *Issue IX, supra.* The Habitual Offender statute does not constitute double jeopardy or double punishment. *Hall v. State,* (1980) Ind., 405 N.E.2d 530; *Wise v. State,* (1980) Ind., 400 N.E.2d 114; *Howard v. State,* (1978) 268 Ind. 589, 377 N.E.2d 628.

■ Upon conviction, it is clearly within the court's authority to determine whether there were aggravating or mitigating circumstances and accordingly to increase or to decrease the fixed term of ten years as provided by the statute. *Dean v. State,* (1980) Ind., 398 N.E.2d 1270.

Appellant also contends that the trial court's "mandate" that he serve his time in a maximum security facility usurped a function vested by the legislature in the Department of Correction. The judgment of the trial court provided:

"The defendant shall be committed to the custody of the Department of Corrections for classification and confinement in a maximum security facility for a period of twenty (20) years which shall be added [to] the thirty (30) years as provided under the Habitual Offender Statute, 35–50–2–8."

■ Such an assignment is not erroneous, but largely superfluous. It is reasonable to assume that the classification board of the reception and diagnostic center will consider the judge's order; nevertheless the formal recommendation as to the place and nature of incarceration is up to the classification board and the final decision is in the hands of the department of correction. *Marsh v. State,* (1979) Ind., 393 N.E.2d 757, 763.

## XVIII.

■ Appellant Munde was sentenced to ten (10) years following his conviction for Burglary, a Class B felony. Munde claims that this sentence is cruel and unusual and manifestly unreasonable.

Rule 2 of the Indiana Rules for the Appellate Review of Sentences provides:

(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed.

The trial court held a sentencing hearing and stated the reasons for imposing sentence, finding neither aggravating not mitigating circumstances. Ind.Code § 35–50–2–5 (Burns 1979 Repl.) requires the imposition of a sentence of ten years upon the conviction of a Class B felony. Munde was found guilty of aiding in the commission of a burglary of a dwelling, a Class B felony, and received the minimum sentence that he could have received. His argument is basically that his conduct was peripheral as compared to Dorton's conduct and that he received fully half of the number of years given to Dorton on his underlying felony. He asserts that this is unreasonable.

There is no requirement that defendants be compared in the determination of sentence in this context. Appellant cites no authority for his claim and there is no merit

to it. Appellant Munde was properly sentenced to the minimum sentence that could have been imposed in the absence of a preponderance of mitigating circumstances. This sentence was neither manifestly unreasonable nor cruel and unusual. Judgment affirmed.

GIVAN, C. J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.