Chester MORRISON, Appellant,

v.

STATE of Indiana, Appellee.

No. 682S220.

Supreme Court of Indiana.

April 24, 1984.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Chester Lynn Morrison was convicted by a jury in the Marion Superior Court of class B felony voluntary manslaughter. He subsequently was found by the same jury to be a habitual offender. The trial court accordingly sentenced Appellant to consecutive imprisonment terms of fifteen years and thirty years. Appellant now directly appeals and raises the following four issues:

1. sufficiency of the evidence supporting Appellant's manslaughter conviction;

2. whether rejection of Appellant's tendered instructions on voluntary intoxication was error;

3. whether admission of certain photographs was error; and,

4. whether the trial court erred by giving final instruction 28.

The facts adduced during trial show that at approximately 7:00 p.m. on January 2, 1981, Appellant engaged in a fight with his estranged wife, Kathleen, in front of the house at 3109 St. Joseph Street in Indianapolis. Appellant held his wife with one hand while using his other hand to hold a shotgun which he fired once into the air. Appellant grabbed Kathleen by her hair and pushed her to the ground as she cried and begged Appellant not to shoot her. Appellant continued to scream at her and to beat her. He grabbed Kathleen in a headlock and dragged her down St. Joseph Street to its intersection with Gray Street where he threw her to the ground and called her a "bitch." Appellant then stood over Kathleen, pointed his shotgun at her, pumped it and shot her in her chest. Kathleen died as a result of the shotgun wound.

Robert Wilson was one of several persons living in the vicinity of the shooting who witnessed the shooting and who testified at trial about it. He specifically testified that after Appellant shot Kathleen, Appellant said "My God, I shot her." Wil-

son also testified that Appellant pointed his shotgun at Wilson and told him to get off the street or else Appellant would "blow him away." Appellant's brother, Gary, testified that he arrived with his car just after the shooting and helped Appellant put Kathleen onto the back seat before driving Appellant and Kathleen to Community Hospital.

## I

Appellant first contends that there was insufficient evidence at trial from which the jury could find that he "knowingly or intentionally" killed as required to sustain a voluntary manslaughter conviction. Ind.Code § 35–42–1–3 (Burns 1979). Appellant specifically contends that the jury could not have found the requisite intent because his intoxication at the time of the offense prevented him from being capable of having a conscious objective to kill or of being aware of the high probability that his action would result in a killing. *See* Ind.Code § 35–41–2–2 (Burns 1979). When the sufficiency of evidence is raised on review, this Court will consider only the evidence most favorable to the State together with all reasonable inferences drawn therefrom. We will neither reweigh the evidence nor determine the credibility of witnesses. When there is substantial evidence of probative value from which the trier of fact could reasonably infer guilt beyond a reasonable doubt, the conviction will not be overturned. *Napier v. State,* (1983) Ind., 445 N.E.2d 1361, *reh. denied.* In the instant case, Indianapolis Patrolman Kenneth Rynard testified that he saw Appellant at Community Hospital shortly after this shooting and found Appellant not intoxicated at that time. Sergeant Stephen Watts also testified that Appellant did not appear intoxicated at Community Hospital. Officer Floyd Harber testified that he saw Appellant at police headquarters during the evening of the shooting and found Appellant not intoxicated. There was no dispute that Appellant shot his wife. Accordingly, we find ample evidence of probative value to support the jury's verdict in spite of Appellant's voluntary intoxication defense.

## II

Appellant next contends that the trial court erred by refusing to give Appellant's two tendered final instructions on intoxication defenses. In determining whether the evidence was such as to require an instruction upon a defense of intoxication, this court considers whether the evidence relevant to the defense, if believed, was such that it could have created a reasonable doubt in the jury's mind that the accused had acted with the requisite mental state or specific intent. *Stoner v. State,* (1982) Ind., 442 N.E.2d 983; *Williams v. State,* (1980) Ind., 402 N.E.2d 954. To create a reasonable doubt, an accused must do more than simply indicate that he consumed an intoxicant since mere intoxication does not necessarily render a person incapable of thinking deliberately or of possessing a guilty intent. *Norris v. State,* (1981) Ind., 419 N.E.2d 129; *See Ives v. State,* (1981) Ind., 418 N.E.2d 220, *reh. denied.* In the instant case, the only evidence suggesting Appellant's intoxication was the testimony by Appellant's brother, Gary, that he and Appellant had been drinking whiskey all day before the shooting. In contrast, three trained police officers testified that Appellant did not appear intoxicated to them when they each saw him shortly after the shooting. Moreover, Appellant's actions at the time of the shooting further indicate that he was thinking and acting deliberately when he shot his wife. Appellant argued with her and dragged her down a street. After he shot her, he acknowledged his deed. He also pointed his gun at Robert Wilson and told him to get away or be shot. We find that there was not a sufficient evidentiary basis to support the giving of any instructions on intoxication defenses. There is no error on this issue.

## III

Appellant also contends that the trial court erred by admitting certain photographs of the victim which allegedly

were cumulative, inflammatory and prejudicial. It is well-settled that the admission of photographs into evidence is within the sound discretion of the trial court and reversal will be granted only upon a showing of abuse of that discretion. The fact that photographs are inflammatory or of a gruesome nature is not sufficient in itself to justify their exclusion as long as the evidence is material and relevant. Relevancy of a photograph depends upon whether a witness would be permitted to describe the objects or scenes depicted by the photograph. *Finch v. State*, (1984) Ind., 459 N.E.2d 1184; *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228.

 In the instant case, Appellant specifically objects to four photographs identified as State's Exhibits 14, 15, 17 and 18. State's Exhibit 13 was introduced through the testimony of Sergeant Watts to show the victim's left upper body as it appeared at the hospital shortly after the shooting. Appellant contends that Exhibit 13 was "sufficient to prove all of relevance to the issues before the jury." Sergeant Watts also introduced Exhibits 14 and 15 which depicted different views of the victim's scrapped right and left knees and thighs. These photographs clearly were admissible as relevant to the testimony that Appellant knocked the victim to her knees and dragged her along a street. Exhibits 17 and 18 were admitted through the testimony of Dr. Benz, the forensic pathologist who conducted the victim's autopsy, and show the victim's body as it appeared at the time of Dr. Benz's autopsy. Exhibit 17 is a photograph of the victim's face, the shotgun wound on the left side of her chest and extending into her left armpit area, a ruler, the victim's left arm stretched out above her head to expose her left armpit area, and the victim's left breast. Exhibit 18 is a left side view of the victim's naked body lying on an autopsy tray. It shows another view of the shotgun wound on the victim's left side.

We now find that each of the photographs described above were relevant with respect to the evidence adduced at trial. Moreover, the number of photographs was not excessive. The trial court did not abuse its discretion by admitting these exhibits. Accordingly, we find no error on this issue.

## IV

 The trial court gave Final Instructions 27 and 28 which informed the jury about "sudden heat." These instructions clearly were warranted by the evidence and Appellant did not object to instruction 27. Appellant did object, however, to instruction 28 claiming that the second and third paragraphs misstated the law. The legal concept of "sudden heat" of course is pertinent to whether one is guilty of murder or of voluntary manslaughter. In the instant case, Appellant was charged with murder but was convicted of voluntary manslaughter. We have held that reversible error does not exist absent some prejudice to a defendant. *Mitchell v. State*, (1979) 272 Ind. 369, 398 N.E.2d 1254, *reh. denied; see VanDerberg v. State*, (1982) Ind.App., 434 N.E.2d 936, *trans. denied.* Since Appellant obviously was not prejudiced by Instruction 28 dealing with sudden heat, we decline to consider his substantive claim and find no error.

 We note, *sua sponte*, that the trial judge incorrectly imposed a habitual offender sentence upon Appellant. Upon finding Appellant to be a habitual offender, the trial court ordered that Appellant be imprisoned for a term of thirty years consecutive to the sentence already imposed. This was improper. Being a habitual offender is not a separate crime for which a defendant is found guilty but is a status requiring the trial judge to enhance a penalty already given. Rather than sentence Appellant to a separate term of thirty years consecutive to the other sentence received, the trial judge should have enhanced the sentence given for voluntary manslaughter by thirty years giving a total term for that sentence including the thirty year enhancement. Accordingly, we remand this cause to the trial judge for correction of Appellant's sentences pursuant

to this opinion. The trial court is affirmed in all other respects.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.