JANE FRANCES DICKENS v. STATE OF INDIANA.

[No. 1270S295. Filed May 3, 1973.]

*Vance M. Waggoner*, of Rushville, for appellant.

*Theodore L. Sendak*, Attorney General, *A. Frank Gleaves, III*, Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Jane Frances Dickens, appellant (defendant below) from a conviction in the Morgan Superior Court for murder in the second degree. The appellant was charged with second degree murder by the Morgan County Grand Jury on January 19, 1970. Appellant filed a motion for change of venue from the judge on March 3, 1970, and upon granting of the motion, the Honorable Sidney H. Showalter, Judge of the Bartholomew Superior Court, was selected as Special Judge. Thereafter, appellant filed a motion for change of venue from the county, which was denied. She was tried by a jury which returned a verdict of guilty on June 12, 1970. On June 18, 1970, appellant was sentenced to the Indiana Women's Prison for not less than fifteen (15) nor more than twenty-five (25) years. A motion to correct errors was filed and overruled, resulting in this appeal.

Appellant presents three major specifications of error:

(1) The trial court's lack of jurisdiction over the defendant-appellant;

(2) Defendant-appellant's denial of a fair trial; and

(3) Insufficiency of the evidence to sustain a conviction for murder in the second degree.

Appellant contends that the trial court had no jurisdiction over her for the following reasons: (1) her arrest was illegal; (2) the Grand Jury was improperly constituted; and (3) the court incorrectly entered a plea of not guilty. We find no merit in any of these arguments. .

This Court has consistently held that the legality of an arrest only has relevancy on appeal when the admissibility on evidence obtained pursuant to an illegal arrest is an ■ issue in the case. *Farmer* v. *State* (1971), 257 Ind. 511, 275 N. E. 2d 783; *Wells* v. *State* (1971), 256 Ind. 161, 267 N. E. 2d 371. No such issue is before this Court.

Furthermore, we have held that an illegal arrest in and of itself neither affects the validity of a conviction for a crime nor dispossesses the trial court of jurisdiction. *Dickens* v. *State* (1970), 254 Ind. 388, 260 N. E. 2d 578.

Appellant challenged the composition of the Morgan County Grand Jury arguing that medical doctors, dentists and lawyers have been systematically excluded. Upon a hearing the trial court overruled the appellant's plea in abatement. The only ground for sustaining the plea in abatement presented by the appellant was the bare allegation found therein. The appellant totally failed to adduce *any* evidence in support of her allegation. Therefore, the trial court was correct in overruling the appellant's plea in abatement.

Appellant's contention that the trial court erroneously entered a plea of not guilty on her behalf is specious. IC 1971, 35-1-24-2 (Ind. Ann. Stat. § 9-1202 [1956 Repl.]) establishes the procedure regarding pleas when the defendant fails to plead at the appropriate time.

> "If a defendant stand mute or refuse to plead
> ■ to an indictment of affidavit, a plea of not guilty
> must be entered by the court and the trial proceeds."

In this case the trial court, immediately after announcing that appellant's plea in abatement was overruled, requested that appellant enter a plea. She declined to do so. The trial court accordingly entered a plea of not guilty. Therefore, the trial court acted in strict accordance with the terms of the above-mentioned statute by entering such a plea.

Appellant has clearly failed to demonstrate that the trial court lacked jurisdiction over her person.

Appellant alleges that the trial court erred in overruling her motion for change of venue from Morgan County. As a result, she contends, she was denied a fair trial due to the pervasive atmosphere of prejudice and excitement extant in the county.

In 1970, CR. 12 provided for one change of venue as a matter of right in all cases punishable by death. In *all other cases* the granting of changes of venue from the county are within the sound discretion of the trial court and must be predicated upon a showing of good cause. The rule further requires a hearing of relevant facts to evaluate the merits of such a motion and to determine whether good cause has been established.

This Court has consistently held that in order to establish good cause for a discretionary change of venue, an adequate showing of bias and prejudice must be made. *Burton* v. *State* (1973), 260 Ind. 94, 292 N. E. 2d 790; *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76. That is to say, the defendant must produce evidence of community bias or prejudice sufficient to convince the trial judge that the defendant cannot obtain a fair trial in that county.

Specifically, the appellant alleges that she could not be tried by disinterested jurors because of eight newspaper articles appearing in the *Martinsville Daily Reporter* prior to trial, the sheriff's alleged enmity toward appellant's counsel and remarks made by the Judge of Morgan Superior Court concerning the instant case prior to trial, which unfortunately were broadcast by a local radio station.

The issue before this Court is whether the appellant has made a sufficient showing of community bias to justify the granting of a new trial.

We believe the aforementioned newspaper articles to be generally innocuous in character, and therefore clearly not prejudicial or inflammatory. The first article, announcing appellant's arrest, appeared on January 9, 1970. The last

article appeared on February 18, 1970. The trial commenced June 11, 1970—almost four months after the appearance of the last article. For the most part, the articles were nothing more than pure news accounts of the preliminary proceedings, e.g., "Sheriff Witness before Jury," "Grand Jury Still in Session," "Plea in Murder Case Continued." It should be noted that under these headlines—none of which were overly bold or banner-type—appeared news of other pending cases. The only headline which may have bordered on the sensational was one in fairly large print appearing at the upper right hand corner of the front page: "Said Mrs. Dickens: 'I shot him' When Officer Entered Door."

It is uncontroverted that the Judge of Morgan Superior Court commented on the instant case in a radio program. The judge stipulated to such fact. The appellant alleges—and in fact testified—that she heard the show in question. Her recollection of the judge's remarks are as follows:

> "Well, he started off with now—the case I am sure you are all wanting to hear about—and then he went on to talk about—you know—Jane Dickens—and a—about asking—my attorneys asking for a Change of Venue and he said a few words after that and he laughed and said—we will see."

While we strongly disfavor the judge's reprehensible behavior, we are unable to conclude that his comments constitute grounds for reversal. There simply is no evidence to support an allegation of widespread community bias brought on by the judge's remarks. Furthermore, it should be noted that the appellant moved for and granted a change of judge. Subsequently, a special judge was duly appointed.

Appellant's contention that the sheriff disliked her counsel and as a result poisoned the minds of the community is totally unsupported by the evidence.

After examining the foregoing allegations of prejudice—both separately and cumulatively—we are constrained from concluding that the appellant established community bias, prej-

udice or predisposition sufficient to justify a reversal on due process grounds. The appellant has failed to adduce any evidence in support of her allegations. The trial court acted properly within its discretion by denying the appellant's motion for change of venue from the county. However, we do believe that publicly-made pre-trial judicial statements regarding a pending case should arouse great suspicion in the minds of trial judges and should be closely scrutinized before a change of venue from the county is denied.

Appellant argues that there was insufficient evidence to support a conviction for murder in the second degree. It must be remembered that this Court, when reviewing sufficiency of the evidence on appeal, will not weigh the evidence nor determine the credibility of the witnesses. Only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Jackson* v. *State* (1971), 257 Ind. 477, 275 N. E. 2d 538; *Shelton* v. *State* (1972), 259 Ind. 559, 290 N. E. 2d 47; *Burton* v. *State* (1973), 260 Ind. 94, 292 N. E. 2d 790.

The record reveals the following facts:

The appellant and deceased had been married for several years. Appellant had initially refused to marry deceased until he quit drinking. He did quit and they were subsequently married. However, about a year and a half later he resumed his drinking and from that time until his demise he would intermittently abstain and resume. At the time of his death and several weeks prior thereto, he had been drinking heavily and taking amphetamines (diet pills) and benzedrine. He had told appellant that he took the pills while he was drinking in order to decrease his alcoholic intake.

On a prior occasion the deceased had threatened appellant with the same pistol used to kill deceased by placing it to

her head. Furthermore, deceased, in a fit of anger a few days before the killing, fired the pistol into the ceiling of their mobile home.

The night before the shooting deceased had been drinking at a friend's home and had become intoxicated. After appellant got him home and put him to bed, she poured out all of his whiskey.

The next morning—the day of the shooting—he told appellant he needed a drink and that he was going into town to get a bottle. However, the car would not start. Deceased then called a friend in Indianapolis and asked him to bring him a battery. Deceased also requested that his friend "bring us down a drink." The friend collected his wife, daughter and brother-in-law, bought a one-half pint or pint bottle of whiskey and drove to Mooresville. They arrived late in the afternoon. The deceased, his friend and the brother-in-law proceeded to have two drinks apiece. After consuming the bottle, the three men went into Moorseville to buy another bottle (at least a pint but maybe a fifth). They stopped on the way home to exercise deceased's dog and had two or three more drinks. They all then returned to the mobile home. Later, they drove back into Mooresville for a fifth of whiskey and purchased some goods at a hardware store. Deceased and his friend dropped the brother-in-law and the other man at a house in which the two men were to do some plumbing work. Deceased and his friend then returned to the mobile home.

As they walked into the trailer, deceased kicked at his dog. Deceased, his friend and the friend's wife sat down at the kitchen table to have a drink. Suddenly, deceased picked up an instant coffee jar and threw it into the living room in the direction of the couch, upon which appellant sat. He then jumped up, grabbed a chair and slammed it to the floor, breaking it into pieces. The friend's wife testified that deceased was "wild looking." The friend got up and asked: "John, what in the world is wrong with you?" The deceased

then slammed his friend against a nearby cabinet. The assaulted friend testified that "the man went crazy."

The appellant had been sitting on the living room couch until the deceased threw the jar at her, yelling "Get out." She got up and ran into the bedroom. When she reached the bedroom the pistol was laying there in plain sight. She picked it up with the thought of disassembling it—fearing that her irate husband might use the gun. She heard a crash (the chair being crushed) and, with the pistol still in her hand, ran back into the living room. Deceased started down the steps into the living room, moving toward the appellant. The two witnesses testified that deceased said something and appellant testified that he said "You are not going any where." Appellant started shooting.

After shooting deceased, appellant ran to him and knelt beside him screaming: "Honey, lay still." She then phoned the ambulance or police.

We believe these facts can only justify a conviction for voluntary manslaughter.

Voluntary manslaughter is defined as a voluntary killing of another human being without malice and in a sudden heat. IC 1971, 35-13-4-2 (Ind. Ann. Stat. § 10-3405 [1956 Repl.]) Killing in the heat of passion is the element which distinguishes voluntary manslaughter from murder. However, to reduce murder to manslaughter, there must be sufficient provocation to engender such passion. *Yarber* v. *State* (1962), 242 Ind. 616, 179 N. E. 2d 882; *Boyle* v. *State* (1885), 105 Ind. 469, 5 N. E. 203.

Passion, of course, takes many forms. The most important characteristic of a truly impassioned mind is its inability to function rationally. Webster's Third New International Dictionary (unabridged) defines "passion" as "the state of being subjected to or acted on by what is external or foreign to one's true nature; a state of desire or emotion that represents the influence of what is external and opposes thought and

reason as the true activity of the human mind." Rage and sudden resentment are thet states of mind most often associated with manslaughter. However, fear is clearly a reason-obscuring state of mind and courts have held that fear, adequately provoked, will reduce murder to manslaughter.

> "[A]ll that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection." *State* v. *Plummer* (1940), 44 N. M. 614, 107 P. 2d 319. See also: *Comm.* v. *Flax* (1938), 331 Pa. 145, 200 A. 632; *Kinard* v. *U.S.* (1938), 96 F. 2d 522 (Court of Appeals for District of Columbia Circuit).

Looking at the totality of circumstances, we believe there was sufficient provocation to evoke great terror in the mind of the appellant. The deceased's heavy drinking and pill taking, his earlier threat on appellant's life, his firing of the gun into the ceiling a few days before the killing and his inexplicable irrational behavior just prior to the shooting constitute provocation sufficient to give rise to an impassioned mind incapable of cool reflection.

Manslaughter is recognized as a lesser included offense in an indictment for murder. *Hutchinson* v. *State* (1967), 248 Ind. 226, 225 N. E. 2d 828. In fact, this Court has reduced a conviction for second degree murder to manslaughter. *Hutchinson, supra.* Furthermore, the authority of the Supreme Court to modify or revise a sentence has been constitutionalized. Art. 7 § 4 Constitution of the State of Indiana [as added November 3, 1970].

Therefore, we hereby direct that the judgment of the trial court be modified and the sentence reduced to manslaughter in conformity with this opinion.

Judgment Ordered Modified.

Arterburn, C.J., DeBruler and Given, JJ., concur; Prentice, J., concurs in result.

NOTE.—Reported in 295 N. E. 2d 613.