**Larry WILLIAMS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1180S428.**

Supreme Court of Indiana.

Oct. 7, 1981.

Rehearing Denied Dec. 23, 1981.

Jere L. Humphrey, Plymouth, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted of murder, Ind. Code § 35–42–1–1; conspiracy, Ind.Code § 35–41–5–2; and armed robbery, Ind.Code § 35–42–5–1, and was determined to be an habitual offender, Ind.Code § 35–50–2–8. Trial was by jury and the jury recommended against the death penalty. He received terms of sixty years, twenty years, and twenty years, for these offenses, respectively, and an additional term of thirty years for the habitual criminal determination, all of the terms to be served consecutively.

### I.

Williams contends that the court erred in denying his motion for mistrial because of an improper comment by the prosecutor, during final summation, upon his failure to testify at trial. The prosecutor stated:

"It's true DeWayne Schuh, Larry Perkins and George Redmon testified, agreed to testify pursuant to plea agreements. They all said they'd agree to testify, and

to testify means to sit on the stand under oath. Nobody agreed to make up a story. There's no evidence of that. There's really nothing—their stories are the only stories you have in basis. They became our witnesses by their own doing and by the doing of Larry Williams, when they agreed to commit this crime. They were the people at the scene and they're the ones best to know what happened. They were there. They are his friends and their story is basically the only story.

MR. HUMPHREY: May we approach the bench, Your Honor."

Defense counsel objected to the statement that "their story is basically the only story", and requested a mistrial. The judge sustained the objection, told the prosecutor that he did not want to hear any more of that, but denied the motion for mistrial.

■ Comment by the court or prosecutor upon the defendant's refusal to testify is a vestige of the inquisitional system of criminal justice which the Fifth Amendment outlaws. *Griffin v. California*, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

"A comment made by a prosecuting attorney directly or indirectly, which is subject to interpretation by a jury, as a comment upon failure of a defendant to testify has been strictly regarded as an impingement on the substantial right of the defendant." *Williams v. Wainwright*, (5th Cir. 1969) 416 F.2d 1042, 1043.

It also violates the specific statutory prohibition thereof in Ind.Code § 35–1–31–3.

"We construe the statute [now codified at Ind.Code § 35–1–31–3] to mean, that, when a defendant in a criminal cause declines to testify in his own behalf, absolute silence on the subject is enjoined on counsel in their argument on the trial. . . ." *Long v. State*, (1877) 56 Ind. 182, 186.

In some situations it may not be improper comment for the prosecution to go so far as to point out during final summation that the prosecution's case is unimpeached and uncontradicted. *Frazier v. State*, (1893) 135 Ind. 38, 34 N.E. 817. However where no one but the accused could have contradicted the prosecution's witnesses such a statement is improper and objectionable comment on the accused's failure to testify. *Rowley v. State*, (1972) 259 Ind. 209, 285 N.E.2d 646; *Desmond v. United States*, (1st Cir. 1965) 345 F.2d 225; *United States v. Flannery*, (1st Cir. 1971) 451 F.2d 880.

The case for the prosecution was based in large measure upon the testimony of codefendants Larry Perkins, DeWayne Schuh and George Redmon. According to their testimony, Schuh, Perkins, Redmon, and appellant Williams planned the robbery of the victim Yarian; appellant and Perkins then procured a sawed-off shotgun; and Schuh, Perkins, and appellant drove to the Yarian residence where appellant Williams alone left the car with the gun while wearing a ski-mask over his face and robbed, shot, and killed Yarian. Mrs. Yarian, the only other person present at the precise point of the shooting testified that she could not identify her husband's assailant because his face was covered with a ski-mask.

■ In the prosecutor's final summation he pointed out to the jury that Schuh, Perkins, and Redmon were people at the scene and that people at the scene know best what happened. He then said that they had given the only story. Appellant was the only other person placed at the scene who did not testify. He was the only person who could give a version of the events of equal strength to their stories, i.e., another "story" or side of the story which might serve to contradict. In this framework, the prosecutor's statement that "their story is basically the only story" was subject to interpretation by the jury as a comment on the failure of the defendant Williams to take the stand, and was an invasion of right.

■ In Indiana pursuant to our holding in *Rowley v. State, supra*, the invasion of right from this improper comment could have been remedied by an immediate and effective admonition by the court to the jury to disregard it. Pursuant to *Gross v. State*, (1974) 261 Ind. 489, 306 N.E.2d 371, and *Lee v. State*, 424 N.E.2d 1011 (Ind.

1981), however, it is reversible error for the trial court to give a preliminary or final instruction to the jury regarding the refusal of the defendant to testify, in the absence of a request by the defendant for it. An admonition to the jury to disregard a prosecutorial statement which is subject to interpretation by the jury as a comment on the refusal to testify, can, like the instruction not to consider the refusal to testify at trial, invite jury consideration of that fact, and therefore should be treated similarly. We therefore hold that the jury should be given an admonition when the defendant requests one, and not otherwise, and that the test to be applied in determining whether or not to grant a mistrial is whether or not such an admonition would be fully effective if given. Here we believe it would have been, and it was therefore not error to refuse to declare a mistrial.

## II.

Appellant sought suppression of shotgun shells and split shot fishing sinkers seized by the police in a search of his mother's residence with warrant. He claimed that the warrant was invalid as based upon a stale affidavit. The trial court concluded that appellant had no standing to assert the claim. We find the warrant valid and the seizure of the items proper and affirm the trial court on this basis.

The offense alleged occurred on March 6, 1979. The affidavit for search warrant was executed and the warrant issued on or about May 12, 1979. The search was immediately conducted and the seizures made. The affidavit chronicled events occurring on March 6, 1979, including the shotgun shooting and robbery of the victim, the division of the loot at the mother's house, and the statement of appellant that he intended to burn the purse.

■ Time can be a critical requirement in determining probable cause. In *Ashley v. State*, (1968) 251 Ind. 359, 241 N.E.2d 264, we held that probable cause to believe that marijuana was in a certain building on a particular day was not probable cause to believe that it would be in the same build-

ing eight days later. Here, we do not deal with marijuana, which can be expected in the natural course of events to be smoked or moved into commercial channels, but with the burned remnants of a purse and its contents, ashes or sludge, having an innocent appearance and no utility. There is a substantial probability that refuse of this nature will not be removed from the site of the burning. There was probable cause to believe that these substances would be at the house and premises of appellant's mother some sixty-seven days after the burning and the warrant was not illegal on this basis.

■ Appellant next contends that the warrant was illegal in that it authorized the officers to search the premises for ammunition, while there was nothing in the affidavit to justify the belief that such matter would be in the house. According to the testimony given on the motion to suppress and the comments of the judge given in support of his order denying the motion, the shotgun shells and the sinkers were found by the officers in the house in plain view. Assuming that that part of the warrant authorizing the officers to search for ammunition was illegal, such illegality would not have rendered the items inadmissible. The warrant was ample justification for the intrusion of the police upon the house and premises, and in the course of legitimately searching for the burned remnants of the purse and its contents, evidence of the crime, the police found the shotgun shells and the sinkers in plain view. From the nature of the murder weapon, appellant's former possession of the murder weapon and ammunition for it, and appellant's use of the house as a hideout immediately after the crime, the officers had probable cause to believe that the items would connect appellant to the crime. The seizure of the items was not contrary to the guarantee of the Fourth and Fourteenth Amendments to the United States Constitution or Art. I, § 11, of the Indiana Constitution. *Ludlow v. State*, (1974) 262 Ind. 266, 314 N.E.2d 750; *Wilson v. State*, (1975) 263 Ind. 469, 333 N.E.2d 755.

### III.

Appellant next claims that the trial court erred in limiting his cross-examination of accomplices with respect to plea agreements reached by them in return for their testimony against him. Such cross-examination should be full and wide-ranging as it bears heavily upon the weight to be accorded to incriminating testimony. *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684. Here, the understanding reached by the prosecution with the witnesses included not only favorable disposition of charges against them stemming from the murder of Mr. Yarian, but other charges against them of murder in which appellant was also charged. The court ruled that counsel could bring out all aspects of the agreement as it pertained to the disposition of charges stemming from the murder of Yarian, including the fact that the witnesses were being freed of exposure to the death penalty, and this was done; however, it ruled that as to the other charges, counsel could bring out only that they were serious felonies and that the sentences agreed upon would run concurrently with those received in the case at bar. This restriction prevented the jury from hearing that the witnesses were being freed of exposure to the death penalty in those cases also.

In the circumstances of this case, two rules, forged for the protection of the accused's right to a fair trial, were in tension, the first being the one granting wide-ranging cross-examination of accomplices who testify for the prosecution, and the second being the one rendering evidence of other crimes by the accused, inadmissible. *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042. If the trial court had permitted the entire understanding between the State and the accomplice witnesses to be brought out before the jury, appellant's complicity in those other crimes would have been revealed to the jury, contrary to the latter rule. On the other hand, to restrict counsel from touching upon the other crimes at all would have been to unduly restrict the right of cross-examination. The reins which the trial court held upon counsel and the witnesses accommodated both rules. His decision was rationally based and reasonable under the circumstances presented. The jury did hear in a general way that the witnesses were being supplied benefits stemming from additional charges of a serious nature against them. The jury also heard about all aspects of the agreement reached with the witnesses relating to the disposition of charges in this case, including direct testimony of the fact that they were testifying in order to avoid exposure to the death penalty. The ruling was not error.

### IV.

Appellant next argues that the trial court erred in allowing into evidence over his objections Exhibits 45 and 47, written statements made by the witness, DeWayne Schuh. Exhibit 47 is a statement of the witness made on May 11, 1979, at the Marshall County Police Department under questioning by a State Police Investigator, describing the events comprising the charged crimes and those events leading up to and succeeding them. Exhibit 45 is a statement given by the witness on May 14, 1979, at the Peru Police Department under questioning by a Marshall County Police Officer, describing the same events. The prosecution attempted to introduce the statements as part of the direct examination of Schuh, but appellant's objections to them were sustained. On cross-examination, defense counsel made limited referral to parts of both exhibits, and on rebuttal the exhibits were again offered by the State and admitted in their entireties over a general objection to the "whole" of both statements being admitted. Objection to Exhibit 47 was also made because some answers to questions were incomplete or wholly missing.

This Court has held that extrajudicial statements of witnesses who testify and are subject to cross-examination are admissible as substantive evidence insofar as they are relevant. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. These statements meet the *Patterson* test, and it therefore follows that it was not error for the trial

court to refuse to limit the State to those portions of the statement which would offset the impeaching effect created by their use on cross-examination. *Johnson v. State*, (1978) Ind., 373 N.E.2d 169.

■ Exhibit 47 does reflect incomplete answers to some questions and no answers to others. However, no claim is made that these deficiencies create any false or misleading impression, and we find none. The statement is sufficiently clear and intelligible as to be enlightening to the jury, and was therefore properly admitted over this objection. *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795.

### V.

■ Appellant next argues that error occurred when a challenge for cause was denied by the trial court. Indiana Code § 35–1–30–4 governs the challenge for cause and provides in part applicable here that a successful challenge may be made on the basis of bias or prejudice for or against the defendant. The prospective juror under questioning testified that upon seeing appellant in court, he drew a first impression that appellant was cocky, and that he might possibly have a little bit of prejudice against him, that he had some doubt whether he could successfully set that aside, and that he would not want a juror in this state of mind if he were on trial. Nevertheless, he stated that he would study the facts and go by them and the law. Under further questioning he stated that there was a one percent chance that he might be unsuccessful in suppressing his first impression judgment.

In addressing this issue, the Supreme Court of the United States opined in *Irvin v. Dowd*, (1960) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751:

"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 366 U.S. at 723, 81 S.Ct. at 1642.

We are satisfied that the condition of this prospective juror's mind as revealed by his statement reflects no disqualifying bias or prejudice against appellant. To hold to the contrary would be to erect an "impossible standard" which few, if any persons could meet. The doubt forthrightly brought out by this juror's statement is the ever-present type which does not show partiality.

Following the denial of the challenge for cause, the juror to whom it was directed was removed as a prospective juror through an exercise by defense counsel of a peremptory challenge. After exhaustion of all available peremptory challenges, he was unable to successfully challenge another juror whom he desired to remove. Appellant argues that the erroneous overruling of his earlier challenge for cause illegally reduced the number of available peremptory challenges. As the earlier ruling was not error, it could not have resulted in an impermissible restriction upon the availability of the requisite number of peremptory challenges afforded him.

### VI.

■ Appellant next argues that the court erred in denying his motion for change of venue from the county based upon adverse publicity. Pursuant to Ind.R. Crim.P. 12, effective at all times herein, appellant sought and, as this was a case in which the death penalty was asked, was granted as a matter of absolute right, a change of venue from Marshall County, the county in which the charges were first brought. The change was perfected to Fulton County where a second motion was made and denied. The second motion was based upon newspapers distributed in Fulton County during the pre-trial period. The burden was upon the accused to produce evidence of bias and prejudice against his cause in the community of the trial warranting the conclusion that he could not obtain a fair trial. *Dickens v. State*, (1973) 260 Ind. 284, 295 N.E.2d 613.

"Prejudicial pre-trial publicity is that which contains 'inflammatory matter which would not be admissible at the defendant's trial, [or] misstatements or distortions of the evidence given at trial. *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, 1064." *Stuck v. State*, (1981) Ind., 421 N.E.2d 622.

All of the ten articles presented appeared before trial, and therefore as in *Stuck, supra*, we are concerned with any inadmissible inflammatory matter which may have appeared in them. There are basically three pieces of information which qualify for this category. One article states that appellant was indicted in yet another murder and another states that appellant's brother was indicted in yet a third murder. Other reference is made to the fact that appellant was being kept separate from his codefendants because of possible reprisals by appellant. The balance of matter including plea agreements with codefendants and a description of the Yarian killing reached the jury in the trial below. Several prospective jurors did state that they had read some of these articles, and from them had formed an opinion against appellant.

An examination of the articles reveals that none in their bodies or titles seek to capitalize upon or emphasize in a sensationalized fashion, the existence of the multiple charges. The other crimes and appellant's link with them are described factually without embellishment. There is nothing presented upon which morbid interest might feed, or which cast appellant as a demonic figure. In *Bruce v. State, supra*, we dealt with the inflammatory effect of an article reporting the pendency of other charges, and concluded that jury exposure to such an article would not necessarily give rise to a substantial likelihood of prejudice. We likewise conclude here that the denial of the motion for change of venue was not error.

### VII.

Appellant was charged and convicted of the armed robbery of Claude Yarian and was also charged and convicted of killing Claude Yarian by shooting him in the course of the same armed robbery, i.e., the crime of felony murder. Appellant contends that these two offenses are the same and that the separate sentences for both cannot stand. The question presented is whether the two offenses are the same for the purposes of determining whether separate sentences may be imposed. This question is to be resolved upon a determination of whether each offense charged required proof of additional facts which the other did not. *Elmore v. State*, (1978) Ind., 382 N.E.2d 893. The armed robbery charge did not require proof of any fact not also required to be proved by the murder charge. Consequently a sentence should not have been imposed upon the verdict of guilty on the armed robbery charge. This result is consistent with the result reached in *Candler v. State*, (1977) 266 Ind. 440, 363 N.E.2d 1233, and *Williams v. State*, (1978) Ind., 373 N.E.2d 142, and the analysis required by *Elmore v. State, supra*.

Appellant next contends that he should not have had separate consecutive sentences ordered for felony murder and conspiracy to commit armed robbery. A conspiracy involves an intelligent and deliberate agreement to commit an offense. *Diggs v. State*, (1977) Ind., 364 N.E.2d 1176. It was unnecessary for the State to prove such an agreement in proof of the felony murder here. It was also unnecessary for the State to prove a killing in order to prove its conspiracy charge. The charges are therefore not the same for sentencing purposes, *Elmore v. State, supra*, and it was therefore proper for the court to give separate sentences for each. Separate sentences may be ordered served consecutively.

Appellant next argues that a sentence of 130 years is violative of Art. I, § 18, since it could not carry with it any goal of rehabilitation or reformation. In *Jennings v. State*, (1979) Ind., 389 N.E.2d 283, we upheld the denial of certain rehabilitative services to those inmates serving life sentences. On like basis, the obstacle which a sentence that extends beyond normal life expectancy poses to the achievement of ref-

ormation does not violate the guarantee of this provision of our Bill of Rights.

### VIII.

■■■■ Appellant next contends that the trial court erred in permitting Officer Woodward to testify concerning an altercation that took place at the Marshall County Jail while appellant was awaiting trial. The substance of the conversation was that appellant accused Woodward of being incompetent and Woodward replied that he did not go around killing old men. Appellant replied, that was Woodward's problem as he would not have the guts to do it anyway. This testimony was irrelevant and inadmissible, and it was error for the trial court to permit its use. The State in its brief is totally unable to suggest any legitimate purpose to the injection of this testimony. In determining whether an error in the introduction of evidence warrants a new trial, the appellate tribunal must assess the probable impact of it upon the jury. *Jackson v. State*, (1971) 257 Ind. 477, 275 N.E.2d 538.

■■■■ The case for the prosecution was strong. It consisted of the statements of codefendants, corroborated by physical facts. The statement attributed to appellant was one made by a young male during his incarceration, under pressure of pending charges, at a time when tempers flared. It was an outburst between captive and captor. The meaning of the statement itself is doubtful. It can, however, be interpreted as incongruous with words one might reasonably expect to hear from one wrongfully charged. There is a prejudice flowing from this trial court error; however, it is so slight that we can justly say that it did not affect the jury verdict.

The case is remanded to the trial court with instructions to vacate the sentence imposed upon the verdict entered upon Count III, armed robbery. The convictions on Counts I and II, and the habitual offender determination are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.