**Debra Darleen ROBINSON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 882S322.

Supreme Court of Indiana.

Sept. 23, 1983.

James L. Kiely, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Dedra Darleen Robinson, was convicted by a jury of murder, Ind. Code § 35–42–1–1(1) (Burns 1979 Repl.), and was sentenced to a forty-year term of imprisonment. She raises the following three issues in this direct appeal:

1. Whether the trial court erred in denying defendant's challenges for cause to two prospective jurors;

2. Whether the trial court erred in admitting defendant's grand jury testimony into evidence; and

3. Whether there is sufficient evidence to sustain the jury's verdict.

A brief summary of the facts from the record most favorable to the state show that on August 5, 1981, defendant's cousin and her three-year old daughter, Shirley Chase, were living with defendant and her family. On that day defendant discovered that Shirley had wet the bed and asked the child why she had done that. When the child did not respond to the questions, defendant hit her with her hand and knocked her to the floor where she hit her head on a chair. Defendant picked Shirley up by the hair and when she would still not respond to defendant's questions, defendant pushed her down and she again struck her head on a chair. Defendant picked the child up again and, this time, defendant's husband began to kick the child.

A few minutes after this beating, Shirley began to have trouble breathing. She was unconscious when emergency medical personnel arrived and died a few days later in the hospital. The cause of death was major brain damage caused by a blow to the head. Defendant presented several witnesses on her behalf who testified to the effect that Shirley's mother had beaten her with a belt about two weeks prior to this incident.

I.

Defendant first claims that the trial court erred in denying the challenges for cause to two prospective jurors. She argues that these jurors had formed an opinion on an element of the crime charged and that because of the court's action she was forced to use peremptory challenges and did not have a jury of her own choosing.

██ Our law on this issue is well settled. We have consistently held that to preserve any error the defendant bears the burden of demonstrating that *at the time she challenged the jurors for cause,* she had exhausted her peremptory challenges. *Morse v. State,* (1980) Ind., 413 N.E.2d 885; *Sutton v. State,* (1957) 237 Ind. 305, 145 N.E.2d 425; *Rock v. State,* (1915) 185 Ind. 51, 110 N.E. 212. Although defendant did later use all her ten peremptory challenges and was denied an eleventh peremptory challenge, she does not show how that later juror was prejudiced or biased toward her. An accused person has the right to a fair and impartial jury, but there is no guaranteed right to a jury of her own choice, nor is there a constitutional right to peremptory challenges. *Lund v. State,* (1976) 264 Ind. 428, 345 N.E.2d 826. We find no error here.

## II.

Defendant next contends that the trial court erred in admitting her grand jury testimony into evidence. She claims this testimony was not voluntarily given because she did not voluntarily, intelligently, and knowingly waive her right to counsel. The record shows that counsel was not appointed for her at the time she gave this testimony.

██ We agree with the state, however, that the evidence demonstrates that defendant did freely and knowingly waive her right to counsel when she testified before the grand jury. It is true that a "target" of a grand jury investigation has the right to legal counsel and is to be advised of that right by the prosecutor or the grand jury foreman and in the subpoena the witness receives. Furthermore, in order to protect a grand jury witness's right against self-incrimination, every witness must be advised of the general nature of the grand jury inquiry and if the witness is the subject of the investigation that person must be advised of this fact. Witnesses must be advised that they have the right to invoke the privilege against self-incrimination at any time during their testimony, that anything they say could be used against them at any

trial of any charge for which they might be indicted, and that the evidence presented to the grand jury could lead to an indictment against them. *State ex rel. Pollard v. Criminal Court of Marion County,* (1975) 263 Ind. 236, 329 N.E.2d 573; *Snyder v. State,* (1979) Ind.App., 393 N.E.2d 802.

In this case, defendant filed a motion to suppress her testimony from the grand jury proceedings, and this motion was denied after a hearing. The record shows that she was served two subpoenas in this case and that the second was a "target" subpoena. It contained a separate page setting forth the nature of the grand jury investigation, the nature of the various rights which she possessed and the fact that she was the focus of the investigation and was the prospective defendant. Defendant and her husband both appeared before the grand jury on the same day and came to the courthouse together with their children. Defendant was requested to appear before the grand jury first and went into the jury room at approximately 2:15 p.m. The prosecutor advised her of her rights and defendant indicated she understood all these rights. Finally, the prosecutor asked her if she had an attorney, and she responded, "No, I don't." After answering a few more questions about her lack of obtaining an attorney, she told the prosecutor that she did want one appointed for her. Defendant then left the jury room without answering further questions and waited in the hallway while her husband went into the jury room.

The prosecutor was involved with the husband's grand jury testimony for three and one-half hours. The prosecutor later explained he had not expected Mr. Robinson's testimony to take that long because he had expected that he would take his Fifth Amendment right and not answer any questions. Around 5:45 p.m., after Mr. Robinson's testimony, the prosecutor explained to defendant that he had not had time to obtain an attorney for her because her husband's testimony had taken longer than he had anticipated but he would try to find an attorney for her before she testified.

At this time, defendant interrupted the prosecutor and told him she had changed her mind and she wanted to appear before the grand jury that day and testify. She re-entered the grand jury room, even though her husband attempted to dissuade her from testifying at that time. She was re-advised of her rights, including her right to counsel, and signed a waiver of rights form before she testified.

Although there was some evidence which indicated that defendant had not graduated from high school and had never held a job outside the home, there is no evidence that she was unable to read the waiver of rights form and understand its contents. Both her husband and the prosecutor had made clear to her that she didn't have to testify that day if she didn't want to. Defendant herself stated that it was her decision to go ahead and testify that day. These facts are sufficient to support the trial court's determination that defendant was fully advised of her right to counsel and that her testimony was voluntarily given.

### III.

Defendant finally argues that there was insufficient evidence upon all the necessary elements of murder to support the jury's verdict. She specifically argues that the injuries which she inflicted upon the child were inflicted in "sudden heat" and that therefore the evidence was not sufficient to sustain the conviction of murder but would only support a conviction for the lesser included offense of voluntary manslaughter. She points to the testimony of one expert who stated that this was not a typical child abuse case because there was evidence of only two episodes of serious injury to the child rather than evidence of frequent episodes of serious injury. He stated that in this case, one episode appeared to be a frenzied spanking and the other episode appeared to be typical of a person in an angered situation. The bruises on the child were limited to areas that are commonly spanked. The emergency medical technician who was first to arrive at the Robinson home testified that defendant and her hus-

band did not realize how seriously the child was injured.

When reviewing the sufficiency of the evidence, this Court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Fielden v. State*, (1982), Ind., 437 N.E.2d 986; *Duffy v. State*, (1981) Ind., 415 N.E.2d 715; *Wofford v. State*, (1979) 271 Ind. 518, 394 N.E.2d 100.

Voluntary manslaughter is defined as the knowing or intentional killing of another human being while acting under sudden heat. Ind.Code § 35–42–1–3 (Burns 1979 Repl.). It is true that killing in the heat of passion is the element which distinguishes voluntary manslaughter from murder. However, to reduce murder to manslaughter, there must be sufficient provocation to engender such passion. *Hedrick v. State*, (1982) Ind., 430 N.E.2d 1150, 1151; *Love v. State*, (1977) 267 Ind. 302, 369 N.E.2d 1073; *Dickens v. State*, (1973) 260 Ind. 284, 295 N.E.2d 613. We have further said that to find sufficient provocation one must find that such emotions as anger, rage, sudden resentment, or terror must be sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection. *Dickens v. State*, 260 Ind. at 293, 295 N.E.2d at 618–19.

In the case before us, the expert testimony established that the child died from brain damage which was caused when she was forcibly pushed against some object. The severity of the injury was such that the child was rendered unconscious within one-half hour to an hour after the injury occurred. The evidence showed that defendant slapped the child and knocked her to the floor twice and that her husband also kicked and dropped the child. Although defendant and her husband may have been angered by the fact that the three-year old girl had wet the bed and was

unresponsive to questioning, this is clearly not sufficient provocation to obscure their reason or their understanding of the consequences of their actions. It is reasonable that an ordinary person would understand that repeatedly knocking a small child against a chair and kicking her could fatally injure the child.

In order to sustain a conviction for murder there must be evidence that the defendant had a conscious objective to kill the victim or was aware of the high probability that his or her conduct would result in the death of the victim. *Burkhalter v. State,* (1979) Ind., 397 N.E.2d 596. The evidence in this case was sufficient to support the jury's finding of the necessary intent or knowledge and to support the conviction of murder.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.