**Norman MORRIS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 885S320.**

Supreme Court of Indiana.

May 28, 1987.

S. Frank Mattox, Sp. Public Defender, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of Attempted Murder, a Class A felony. Appellant was sentenced to the presumptive term of thirty (30) years.

The evidence in the case is: Appellant and the victim, Jane Morris, lived together for a period of over twenty-three (23) years, most of which time they were married. During the course of their relationship, four children were born. In addition, the couple provided a home for four of appellant's children by a previous marriage. Their relationship was tumultuous, involving physical abuse of Jane by appellant, and on at least four occasions she left the home. On those occasions Jane would travel from their home in Rochester, New York, to homes of relatives in Louisville, Kentucky.

In spite of the strife and physical abuse, no divorce proceedings were ever filed, nor was there ever any complaint to police authorities. On May 23, 1983, Jane left the marital home for the last time and journeyed to the home of an aunt, Jean Futters, in southern Indiana. During this time, she remained in touch with appellant and her children by telephone. The children warned her that appellant had hired a detective to try to determine her exact location, and also that appellant had a gun and was threatening to come to Indiana to kill her.

Rhonda Morris, one of the couple's daughters, testified that before they left Rochester, New York, appellant showed her the pistol later used in the attack, ordered her to handle the pistol and told her that she was going to kill her mother. He then required Rhonda to go with him in his automobile to New Albany, Indiana, where they arrived at approximately 2:00 a.m. on December 2, 1983.

After locating the home in which Jane resided, they parked and waited for her to

come out of the house to go to work. Rhonda testified that her father had disassembled a long gun, which was packed in a suitcase, and that the pistol used in the attack was in a makeup case, which Rhonda was holding on her lap while seated beside her father in the automobile. When Jane came out of the house and entered her automobile, appellant took the gun, loaded it and went to Jane's automobile, where he demanded that she get out.

Jane Morris testified that when she saw that appellant was holding a gun pointed at her she felt that he was going to kill her and that her only chance was to get out of the vehicle and attempt to run. As she exited the vehicle, appellant grabbed her by the arm but she was able to pull away from him and start running. Appellant fired several shots at Jane as she ran to a nearby porch, where he caught up with her and continued to fire at her as she attempted to cover her head. There is some confusion as to how many bullets actually struck the victim; however, there were at least four and possibly five.

Appellant testified and gave an entirely different version of the altercation. He claimed that he was unarmed when he approached the victim's vehicle, that she attempted to shoot him with a gun which he wrested from her grasp, and that he then blacked out. He also claimed he was so upset that he had no recollection of what he did after taking the gun from the victim.

Appellant claims there is insufficient evidence to support the verdict. He recognizes that this Court will not reweigh the evidence, citing *Davenport v. State* (1984), Ind., 464 N.E.2d 1302, *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416. However, he also cites *Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240, for the proposition that the evidence to sustain a conviction must be sufficiently credible to be of probative value. He takes the position that his state of mind was such at the time of the shooting that he did not have the capacity to form the intent to commit murder.

This of course is based upon his version of the episode, in that he claimed he did not bring a gun to the scene and that it so distressed him when his wife tried to shoot him that he reacted in the manner in which he did in a sudden heat of passion. There is no question but what sudden heat may reduce a murder or attempted murder charge to manslaughter or attempted manslaughter. *Dickens v. State* (1973), 260 Ind. 284, 295 N.E.2d 613. However, such is not the case in this instance.

The testimony of appellant's daughter alone was sufficient to convince the jury that appellant left his home in Rochester, New York, with the avowed purpose of shooting his wife, that he armed himself before leaving, that he drove from New York to southern Indiana so armed, that he enlisted his daughter's assistance in watching for the appearance of his wife and that he left his own vehicle with loaded gun in hand to approach his estranged wife in her vehicle. The victim's testimony also supported the claim that appellant approached her vehicle with gun in hand and that he fired at her as she was running from him in an attempt to escape. There is an abundance of evidence in this record to support the verdict of the jury.

Appellant claims his cause should be reversed because of prosecutorial misconduct. During the struggle between appellant and his wife, he tore a wristwatch from her arm. The police had the damaged wristwatch in their possession for a short period of time but before trial returned it to the victim, who had it repaired. Appellant now takes the position that this was misconduct, in that the returning of the wristwatch to the victim amounted to the failure to preserve exculpatory evidence and thus should be categorized as the destruction of tangible evidence.

In the first place, this question was not raised at the time the victim was testifying as to the damage to her wristwatch and the manner in which it occurred. In the second place, we fail to follow the reasoning in appellant's claim. There is absolutely no conflict in the evidence as to whether the victim's wristwatch was damaged in the scuffle. That fact does not negate appellant's claim that he was forced to wrest the

gun from his wife's grasp, nor does such fact negate any part of his wife's testimony. The police action in returning the wristwatch to the victim was entirely proper, as there was absolutely no reason why the wristwatch should have been retained as material evidence. Appellant in no way shows that the return of the wristwatch to the victim placed him in peril to which he should not have been subjected. In the absence of such a showing, he is not entitled to a reversal. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973.

Appellant claims the trial court abused its discretion in denying his motion for a mistrial based on jury misconduct. During the course of the trial, one of the jurors notified the bailiff that she had an errand she wished to run in the courthouse. The bailiff advised her that she should not separate from the jury and that he should go with her on her errand; however, she left, without the bailiff, for a short period of time. She was later seen emerging from a stairwell shortly after which the victim and her aunt, Jean Futter, were also seen emerging from the same stairwell.

Both the victim and her aunt stated that they did not have any conversation with the juror. The juror also denied any contact with the victim or her aunt. The record is devoid of any evidence to indicate that there was any contact between the parties. Appellant cites *Woods v State* (1954), 233 Ind. 320, 119 N.E.2d 558, for the proposition that such potential contact is reversible error; however, the case at bar does not parallel the *Woods* case in any way. In *Woods*, police officers who were State's witnesses were allowed to visit with the jury in rooms where they gathered during intermissions and recesses. This of course was highly improper, as was held by the Court in that case. The facts here do not approach such a situation. Although the action of the juror, contrary to the instructions of the bailiff, was improper, there is no showing that such impropriety rose to the stature of reversible error.

Appellant claims his sentence of thirty (30) years is manifestly unreasonable. In sentencing appellant, the trial court stated

that he had weighed the case and had reviewed the pre-sentence investigation, and found that the mitigating circumstances did not outweigh the aggravating circumstances, nor did the aggravating circumstances outweigh the mitigating circumstances. He thus found that the presumptive sentence was proper. This was well within the judge's discretion in fixing the sentence. *Clay v. State* (1981), 275 Ind. 256, 416 N.E.2d 842.

When a presumptive sentence is imposed, the trial court need make no statement of reasons for the sentence. *Warner v. State* (1983), Ind., 455 N.E.2d 355. Thirty years in this case was the presumptive sentence. Ind.Code § 35–50–2–4. There was no error in imposing appellant's sentence.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.