**Michael Anthony CAMPBELL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 10S00–8803–CR–326.**

Supreme Court of Indiana.

April 3, 1989.

Michael J. McDaniel, McDaniel, Biggs & Ollis, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A bench trial resulted in appellant being found guilty of Murder but mentally ill. The court reduced the presumptive sentence of forty (40) years by eight (8) years by reason of mitigating circumstances. Thus, appellant was committed to the Department of Correction for a period of thirty-two (32) years.

The facts are: On December 9, 1986, appellant was residing with his mother in Jeffersonville, Indiana. He had exchanged some words with his neighbor David Johnson. At approximately 6:00 a.m., appellant stood on his front porch as the victim was leaving for work and called to the victim. As the victim approached him, appellant raised a Luger semiautomatic pistol and fired three shots into the body of the victim.

Appellant then entered his house, put down his gun, and called the police. When the police arrived, he told them he shot the victim "to save Mom and save me." However, there is no evidence in this record that the victim had ever threatened appellant. In fact, the victim appeared to be appellant's friend. They had watched movies together and played guitars together. During the investigation, appellant's mother told the police officers that her son had been concerned that the victim was going to put bombs in her car or her house. However, there is nothing in this record to substantiate such a belief on the part of appellant.

Appellant first filed a motion for psychiatric examination as to his competency to stand trial. This motion was granted and psychiatrists were appointed. Appellant then filed a notice of intent to interpose the defense of insanity. The evidence is that appellant's treatment for mental problems began in 1970 when he was in the National Guard, and he met with Dr. Archangel, a psychiatrist, for a number of sessions.

In mid–1976, appellant travelled through the west for several months. When he returned, he was experiencing auditory hallucinations, and his mental condition began to deteriorate. In 1978, appellant's mother had him committed to a southern Indiana mental health center, and after his release, he was placed on medication and regular outpatient counseling.

After his father's death in August of 1985, his condition worsened. He applied for and received Social Security Disability. He feared for his and his mother's safety and purchased a pistol for his mother's protection. He feared that there would be a world war and began to stockpile supplies in his room. During this time, however, his mother felt that he was well enough to be left alone for a period of days on two separate occasions.

Doctors who testified were in general agreement that appellant was suffering from chronic paranoid schizophrenia. Four of the five doctors who testified stated that in their opinion appellant was insane at the time he committed the offense. The fifth doctor, Dr. Joseph Brill, testified that he found no evidence that appellant was insane at the time of the homicide unless he was delusional. The witness felt appellant was sincere when he stated that he felt his security was in jeopardy and that he shot the victim in self-defense.

Lay witnesses testified that they thought appellant was "weird," but they believed him to be sane at the time the offense was committed.

Appellant claims the trial court erred in finding that he had failed to meet his bur-

den of proof on the issue of insanity. Indiana Code § 35–41–3–6 reads as follows:

"(a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.

(b) As used in this section, "mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct."

In the case at bar, although the weight of the expert medical testimony was that appellant was insane, there nevertheless was evidence presented to the trial court that appellant was sane at the time of the incident. This Court has previously stated that on appeal we will reverse the trial court on a finding of sanity "only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached an opposite conclusion,...." *Green v. State* (1984), Ind., 469 N.E.2d 1169, 1171.

In the case at bar, the trial judge had the opportunity to hear and observe the witnesses and determine the weight of their evidence. In view of the fact that there was evidence on both sides of the question of sanity, we do not feel justified in invading the province of the trial court. *Id.*

■ Appellant claims there is insufficient evidence to support the trial court's decision in that his evidence showed that he acted in sudden heat, reducing the crime to that of voluntary manslaughter. Although appellant and his mother both testified that appellant was afraid of the victim and thought that he would do harm to them, there is no evidence that there was any kind of confrontation or threat on the part of the victim at the time he was killed.

Appellant stepped out on his front porch and called to the victim who was about to enter his automobile. As the victim approached appellant, he was unarmed and smiling. Although they had argued in the past, there was absolutely no evidence that

at the time the victim was shot there was any type of confrontation between the parties.

Even appellant's own testimony was as to his fears concerning what appellant might do in the future. He did not then and does not now claim that the victim was posing an immediate threat to him. There is no evidence whatsoever to support appellant's claim that he should have been found guilty of voluntary manslaughter.

Appellant cites *Dickens v. State* (1973), 260 Ind. 284, 295 N.E.2d 613. However, *Dickens* presents an entirely different factual situation than the case at bar. In *Dickens,* the victim was in his trailer drinking with friends when he suddenly went berserk, smashed furniture, slammed a friend against the wall, and threw a coffee pot at his wife who was seated on the couch. The wife retreated to a bedroom, obtained a pistol, and as appellant approached her in a threatening manner, shot him. There are no parallel facts in the case at bar.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.